## INGRAM v. BOWERS.

### No. 282.

Circuit Court of Appeals, Second Circuit.

March 21, 1932.

Francis C. Lowthorp, of New York City, for appellant.

Walter H. Schulman, of New York City, for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff is the widow and ancillary administratrix of the singer, Caruso, who during his life paid the sums at issue in discharge of deficiency assessments of income taxes for the years, 1918, 1919 and 1920. She sued to recover these; the case was tried before a jury of one, and the judge directed a verdict for the defendant at the end of the evidence and wrote an opinion stating the facts in detail. Ingram v. Bowers (D. C.) 47 F.(2d) 925. We adopt his statement, and refer to it as the premise of our discussion.

The case turns upon the meaning of the phrase, "gross income from sources within the United States," as used in section 213 (c) of the Revenue Act of 1918 (40 Stat. 1066); for we assume arguendo that, as the judge found, Caruso was a non-resident alien. If his agreements with the Victor Company were no more than contracts for personal services, it makes no difference whether we hold, as

was held below, that the source of the resulting income was the services rendered, or the promise to pay the royalties. The first has the authority of a departmental ruling (Cum. Bul. Dec. 1920, p. 128), and whatever inferences may be drawn from the amendments in the statutes from 1921 forward (section 217 (a) (3) of the Acts of 1921, (42 Stat. 244) and 1924 and 1926 (26 USCA § 958 (a) (4); § 119 (a) (3) of 1928, 26 USCA § 2119 (a) (3). On the other hand we find it difficult to distinguish Edwards v. Keith, 231 F. 110 (C. C. A. 2) and Woods v. Lewellyn, 252 F. 106 (C. C. A. 3). A priori, the source of an income would seem to be determined by the same factors, whether time or place be in question; if that source is the consideration for the promise, and not the promise itself, the return for services rendered before any tax was imposed would not be a gain from any taxable source. However, we are not driven to a decision on this point, because if the source is the promise, the promisor was also within the United States, and the same result follows as though the service was the source.

The more vital question is whether the contracts were for more than personal services; whether they gave to Caruso some interest in the matrices and records, or, if there was any copyright, in the copyright; and whether the payments can in this wise be looked at as emanating from property. If so, the plaintiff argues, the sums in suit came from the foreign matrices; if not, then at least from the foreign companies. As to both matrices and records the second contract is too clear for question; it provides that Caruso "grants all rights in and to" them. The first contract contained no such words, but we think that the result was the same. In it he only agreed "to make these records," meaning of course, to sing into the recording apparatus, and the Victor Company, to pay him a royalty as records made from the resulting matrices were sold. The company was to manufacture both; prima facie they became its chattels like anything else of its make. If it was intended to give Caruso an interest in them, some such reservation was to be expected, and there was none. The fact that his return was called a royalty is immaterial; it was so described in the second contract which was not equivocal. No remedy was created by which he could assert any such rights. It appears to us that the purpose was the same as was expressed later, and if so, he had no proprietary interest in the profits arising out of the records. If there be a copyright under section 1 (e) of the Copyright

Act (17 USCA § 1 (e)—which we do not say—it became embodied in the matrices, as a literary composition is embodied in its text. Any putative monopoly would do no more than prevent the copying of these, and it passed with the property in them. It was not impliedly reserved separate from them, for that would have interfered with their full enjoyment which the manufacturer was certainly to have.

Nor can we see how the source of the payments could be the royalties paid by the foreign companies to the Victor Company. They did not promise to pay Caruso, or to assume the obligations of the company. Whether in the event of its insolvency, he could have had recourse to their promises is beside the mark. Assuming as much, it would be only as security for the Victor Company's performance, and that would not change the source of the income while it continued to perform. For argument we may even assume the contrary after default; it never did default; all the payments here in question came from it. This would be equally true, though by a long stretch we were to assimilate the situation to that in Re Waterson, ·Berlin & Snyder Co., 48 F.(2d) 704 (C. C. A. 2), and hold that Caruso had a lien upon the matrices sent to the foreign companies. That would again be only as security, for under the doctrine of that decision the second assignee does not, by accepting the transfer, become personally liable on the promise of the first. As long as the first assignee performs, the assignor's rights against the second remain in abeyance; if he defaults, they are against the property alone. Thus, on no theory can it be said that the source of this income was outside the United States.

Judgment affirmed.