## SANCHEZ v. COMMISSIONER OF INTERNAL REVENUE.
### No. 208, Docket 20382.

Circuit Court of Appeals, Second Circuit.
June 21, 1947.

Harry L. Gutter, of New York City (Arnold H. Shaw, of New York City, of counsel), for petitioner.

Sewall Key, Acting Asst. Atty. Gen., and Lee A. Jackson and Hilbert P. Zarky, Sp. Assts. to Atty. Gen., for respondent.

Before CHASE, CLARK, and FRANK, Circuit Judges.

CHASE, Circuit Judge.

The petitioner is a nonresident alien who filed his income tax return for 1940 on the cash basis with the Collector of Internal Revenue for the Southern District of New York. The Commissioner determined a deficiency based in part on the inclusion of $8,673.30 which the taxpayer was paid in that year by Sucro-Blanc, Inc., a New York corporation, under the following circumstances.

Petitioner had invented and patented in this and in some foreign countries a process for clarifying solutions of sugar by the use of a chemical re-agent, called Sucro-Blanc, he also invented and patented. In 1934 he granted to a New York corporation called the Buffalo-Electro-Chemical Company (which will be hereinafter referred to as Becco), an exclusive world-wide license to exploit his inventions so patented and to be patented and to sub-license under such patents. He was to receive from Becco a royalty of fifty per cent of its net profits from the sale of Sucro-Blanc used in the process; from its receipts from royalties; from fees from its sublicensees and recoveries from infringers; and from the disposal of any interest in the patents. Becco agreed to pay the petitioner minimum royalties of $25,000 a year and had the right to recoup payments not earned in any year out of royalties earned in any later year in excess of the minimum.

In 1936 Sucro-Blanc, Inc., was organized by Becco under the laws of New York and the Becco contract with the taxpayer was assigned to it. The taxpayer became a stockholder in Sucro-Blanc, Inc., but Becco retained stock control of the new corporation. Thereafter the provisions for royalty payments to the petitioner were modified by an agreement under which Sucro-Blanc, Inc., was to pay to Becco the sum of $30 per short ton on all the sales it made of the re-agent called Sucro-Blanc, and 37½ per cent

of whatever it received from any sale, assignment, sub-license or any other disposition of any of the petitioner's patents or rights under any such patent. The same amounts were payable to the petitioner and the minimum royalty due him was reduced to $12,000. In 1937 the agreement was further modified to provide for the payment quarterly by Sucro-Blanc, Inc., to both Becco and the petitioner of 10 per cent of all its sales of Sucro-Blanc f. o. b. Wyandotte, Mich., instead of $30. per short ton.

In June 1940, these three parties again changed the language in the agreement to make it even more plain that they had agreed the amounts to be paid Becco and the petitioner were to be based on a percentage of the selling price of all sales of Sucro-Blanc and the amounts so payable to the petitioner were royalties on all his patents foreign and domestic measured as above stated. Sucro-Blanc agreed to keep separate accounts on its books of the receipts from sales of Sucro-Blanc for use in this country and for use abroad. It granted sub-licenses both in this country and abroad to purchasers of Sucro-Blanc for the use of that re-agent in the patented process royalty free.

 The Commissioner determined that the above amount received by the petitioner as his share of the proceeds from sales of Sucro-Blanc by the corporation of that name for use abroad was includable in his gross income and not excluded therefrom under Sec. 212(a) of Title 26 U.S.C.A. Int. Rev.Code as income from sources without the United States. The Tax Court upheld that decision and its action in that respect is the first subject for review.

While the agreement the taxpayer had with Becco and Sucro-Blanc, Inc., as it was last amended, did provide that the amount in controversy should be considered royalties on the petitioner's foreign patents they could not thereby change the actual facts and make exempt from taxation what was really income from domestic sources by calling it income from abroad. There were provisions in the contract for the division of receipts by Sucro-Blanc, Inc., from its sales of the re-agent and provisions for the division of its receipts from royalties it was paid by sub-licensees. In fact it received nothing within the last named category and consequently the petitioner received nothing for the use of his foreign patents as such. All of the amount in controversy was received by him as of right by virtue of his contract entitling him to it as part of the selling price of the re-agent sold to foreign purchasers and delivered by Sucro-Blanc, Inc., to a common carrier in the United States and when he was paid that amount by such seller his source of the payments was the seller, an American Corporation which, so far as this record shows, used any of its funds as it pleased to make the payments to the petitioner.

Anything which might have been received by it by way of royalties, or otherwise, for use of the petitioner's foreign patents was renounced when purchasers were allowed, presumably as part of the inducement to buy at the sales price charged, to use those patents for nothing. And so the petitioner received only what was due him from a domestic exclusive licensee and nothing for the use of any foreign property. Compare, Ingram v. Bowers, 2 Cir., 57 F.2d 65.

 The second matter in controversy is whether the petitioner is taxable in 1940 or in 1939 on $7,642.60 which he received on January 3, 1940, as his share of the proceeds of sales of the re-agent made by Sucro Blanc, Inc., in 1939. The Commissioner in redetermining the deficiency included it in the petitioner's 1940 gross income and the Tax Court approved that. Since the petitioner was on the cash basis and since it was correctly found that this amount was not made available to him in 1939, there was no constructive receipt of it in that year. Compare, Avery v. Commissioner, 292 U.S. 210, 54 S.Ct. 674, 78 L.Ed. 1216. It therefore was taxable to him in the year he actually received it.

Affirmed.