H. A. ECKHARD AND MILDRED ECKHARD, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 17646, 17647.   Promulgated March 22, 1949.

*J. E. Marshall, Esq.*, for the petitioners.
*S. B. Anderson, Esq.*, for the respondent.

390

OPINION.

DISNEY, *Judge*: We shall first examine the question as to whether the petitioners are to be taxed in equal amounts as partners upon the profits of General Tires. The petitioners' argument is, in effect, that Mildred Eckhard furnished the original capital with which 50 shares of stock in the Ohio corporation were purchased in 1941, that she contributed services, in effect, as much as did her husband, and that, therefore, along the lines laid down in *Commissioner* v. *Tower*, 327 U. S. 280, she should be recognized as a partner in the business. The Commissioner, on the other hand, in substance, takes the view that, though contributions of capital and of services are proper elements for consideration in deciding whether there is a partnership, here the petitioners had no written agreement, that no books or records were ever set up or returns filed on the theory of partnership, that the wife never assumed the liabilities incident to the position of a partner, that the property at all times stood in the name of the husband, that he represented himself in returns filed as the owner, and that, therefore, a partnership should not be recognized.

Analysis of the facts before us, in the light of the question involved, has not been without difficulty. It is clear that the wife contributed $5,000 to the business. This purchased the original 50 shares of stock. It is not contended that she furnished any other money and the evidence is that the other 97 shares of stock later purchased were purchased from the profits of the business. She did perform much service for the benefit of the business. We do not understand the *Tower* case, however, to lay down any rule that the mere contribution of capital and services necessarily establishes a partnership—though elements properly to be considered on the question. Here our problem, in essence, is whether the wife made such contributions of capital and services by way of entering into a partnership, or merely to assist her husband in his business as a wife might do. The question is: Did the husband and wife transact business as a partnership? After close study of all of the facts involved, we have come to the conclusion that they did not. A number of considerations compel this result and cause us to believe that the petitioner has failed to demonstrate business done as a partnership.

Though the lack of a written agreement is, of course, not conclusive, it may not reasonably be altogether disregarded. The evidence, even on oral agreement, is not altogether unequivocal. The husband testi-

fied that after the liquidation of the corporation he and his wife continued to operate the business as a partnership, as a joint project, share and share alike; that they had agreed that the profits would be invested for their mutual benefit; that in 1941 when they were in Oklahoma City to investigate the General Tires, Inc., proposition they discussed it and decided they would go into it as a partnership deal. The wife, on her part, stated that they liquidated the corporation and decided to operate as a partnership; that they had no written partnership agreement; that "We never discussed that subject [whether they should have a written agreement]. At any time I need a written agreement with my husband I will not be living with him"; that when they had an oral agreement they considered that adequate; that she felt that the return should have been a partnership return. There is no positive statement by either husband or wife that there was ever an oral agreement of partnership. The nearest thereto that the record indicates is the answer "It was." to a leading question on cross-examination to the husband: "Your agreement was oral?". We can not believe that there ever was even an oral partnership, and we have concluded that here the wife was merely contributing in a commendable way to the success of the business conducted by her husband. There is not even a contention that she ever assumed liability for any debts of any partnership and no fact indicates that she was ever so bound. There were no partnership records, no capital accounts, withdrawing accounts, returns, or any other current records to bear out the partnership theory. On the contrary, the stock of the corporation, at least the first 50 shares, was in the name of the husband. Though it is testified that this was for convenience and that the Ohio corporation would not trade with her because she was a woman, the evidence impressed us as conclusion rather than fact. No positive showing is made as to who was the purchaser of the 97 shares purchased in January 1943, but he testified that he did not become controlling stockholder until that time. In this connection, however, we note that the evidence by the husband is that about January 1, 1947, "I sold a half interest in the business."

Of interest, also, is the fact that throughout the year 1943 the husband was held out to the United States in income tax returns and employer's tax returns under the Federal Insurance Contributions Act as the owner of the business and that the maker of the return was "Eckhard, H. A., DBA General Tires." We take judicial notice of the fact that DBA is an old and well known commercial expression meaning "doing business as." *State* v. *Dowling*, 202 S. W. (2d) 580. In short, the business was repeatedly, in fact seven times throughout the year 1943, reported to the United States as being one conducted by H. A. Eckhard and eight times he signed the returns as owner.

The wife's name never appears in any of the returns or in any other record to indicate that she was a partner; and, finally, neither her return nor that of her husband for the taxable year in any way indicates her to be a partner. In the face of such a record we have not found it reasonable to sustain the petitioners' contention that a partnership was being conducted.

It is true that there is evidence that, when the returns for 1943 were being prepared, apparently early in 1944 (since although neither return is dated both bear a stamp dated April 15, 1944), the wife thought a partnership return should be filed. This evidence is not very convincing, for, though she may have felt herself to be equally interested with her husband, it does not demonstrate that the business was carried on as a partnership or that she was doing more than a helpful wife would do to forward the family fortunes; and it is in logic largely neutralized by the fact that she was overruled by her husband and an accountant, which may have been due to the view that there was no partnership. We also take judicial notice of the fact that the Oklahoma statute requires parties conducting business under a fictitious name to file public record of their names with the court clerk. Title 54, secs. 81, 83, Oklahoma Stat. 1941. The name used after dissolution of the corporation was "General Tires," which plainly was a fictitious name in that it did not disclose the names of the owners or parties conducting business, as required by the statute. No showing is made in this record of any compliance with such statute, though it involves, as a penalty for failure to so file, inability to collect debts until such filing. It is difficult to believe that both husband and wife were actually conducting this business during the year 1943 without filing as required, instead of doing business as H. A. Eckhard as owner, as he repeatedly reported to the Federal Government. The facts indicate to us current recognition by the parties that only H. A. Eckhard was doing business as General Tires, most particularly since it has been held in Oklahoma that the statute does not require the filing if only one person is doing business under a fictitious name. *Katterhenry* v. *Williamson*, 190 Pac. 404.

The record suggests a contention that it was regarded as immaterial whether the returns were filed on the partnership basis or on the community property basis. At the time petitioners filed their income tax returns for 1943 this Court had, in the case of *C. C. Harmon*, 1 T. C. 40, given effect to the Oklahoma community property law enacted in 1939. The Supreme Court later, in *Commissioner* v. *Harmon*, 323 U. S. 44, reversed this Court and the Circuit Court. It then became apparent for the first time that division of the family income of the petitioners depended upon the existence of a partnership. The

parties are, of course, highly interested witnesses. We think that their views as reflected in the testimony can not stand against the facts above found and discussed, in effect showing that nothing was done prior to or within the taxable year or even in the income tax returns filed later for such year to indicate that any theory of partnership was entertained. On the contrary, every record made was consistent only with ownership in the husband. The fact that the entire capital stock and surplus of General Tires, Inc., was, upon dissolution, entered solely in H. A. Eckhard's account on the books of the new business is contrary to any theory that he was not owner, both of the corporation and later of the proprietorship, but in a partnership with his wife. Finally, in the income tax returns his occupation is listed as that of "Tires, gas and oil," while hers is merely "Clerical," an incident consistent with the assistance she rendered in the store, but inconsistent with a claim of participation in the business of tires, gas and oil. Had she been then considered a half owner, her return would reasonably be the same as his in this respect. From all the facts, we can not but conclude that during the taxable year the petitioners did not transact business as a partnership and that the partnership profits are not divisible between the husband and wife for Federal income tax purposes.

There remains for consideration the question as to whether the $12,832.76, the agreed amount of the earnings of petitioner H. A. Eckhard from July 1, 1941, to the dissolution of the corporation, is taxable to him in 1943. It is agreed that when the liquidation occurred in 1943 he was credited with that amount. His theory is that in the earlier years he had had constructive receipt of the money, though he had never taken it down from the corporation as he had a right to do under his contract. The doctrine, under many cases, is to be sparingly applied. *William A. Hines*, 38 B. T. A. 1061. He was at all times on the cash basis. He did not receive the money in the earlier years and did receive it in the taxable year. Nothing of record before us indicates in any degree that the amount was ever credited to him upon the corporate records. Indeed, it is not so contended. Though H. A. Eckhard was president of the corporation, he was never majority stockholder thereof until January 1943, when the 97 shares were purchased; and the corporate returns are signed by another person as treasurer. We may not rationally conclude, therefore, that petitioner H. A. Eckhard had such control over the corporation as to have any basis for constructive receipt. In the absence of any showing of credit or setting apart of the amounts to him upon the corporate books so that he would have a clear right to draw the money, he is not in the position of having constructively received the amounts involved.

Many cases require crediting, without restriction, to the alleged recipient. *Van W. Peabody*, 5 T. C. 426. Cf. *Commissioner* v. *Arnold*, 147 Fed. (2d) 23; *Burns* v. *Commissioner*, 31 Fed. (2d) 399. He never returned the income as received in 1941 and 1942 and his testimony as to his failure to make the return is not convincing. Asked to explain why he did not, he stated that "I turned the income tax reports over to Mr. Conliff, the accountant. * * * I had no way of knowing whether I should have or should not." He did not show Conliff his employment contract with General Tires, Inc.; he did not think it was necessary to do so. It is difficult to formulate a reason for failure to return this income if petitioner H. A. Eckhard at that time considered that he was receiving it. We conclude that on a cash basis he did not receive it until 1943 and, therefore, should be taxed upon it in that year.

*Decisions will be entered for the respondent.*