JAMES GOULD COZZENS, PETITIONER, v. COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 34372.   Promulgated January 21, 1953.

*Benjamin C. O'Sullivan, Esq.*, for the petitioner.
*George E. Grimball, Jr., Esq.*, for the respondent.

OPINION.

VAN FOSSAN, *Judge:* The sole question to be determined is whether the petitioner is entitled to the benefits of section 107 (b) of the Internal Revenue Code.[1] The respondent urges that this section is inapplicable principally because the petitioner did not receive 80 per cent of the proceeds from the book, "The Just and The Unjust," in 1942 as required by the statute. It is agreed that the total royalties received by the end of 1942 and during the subsequent twelve months aggregated $40,944.28. Eighty per cent of that sum is $32,755.42. The petitioner's agents received a total of $31,700 in 1942 and the remainder in 1943. The petitioner, through his agents, thus received less than 80 per cent of the gross income derived from the sale of the book in the period specified by the statute.

The petitioner contends, however, that in addition to the amount actually received, more than $5,000 was constructively received in 1942. See *Ross* v. *Commissioner*, 169 F. 2d 483. This claim is based upon the fact that the publisher of his book was willing to allow the petitioner advances in 1942 against royalties payable in 1943. The contract between the parties called for payment of an advance of $1,000 in 1942 and an accounting in April 1943 for royalties on sales made during the 6 months following publication in July 1942. No obligation to pay any specific sum in 1942 in excess of $1,000 was incurred by the publisher nor did it otherwise agree to pay any such amount. The president of the publishing house, however, was willing to make advancements to the petitioner from amounts accrued from sales and actually paid him $31,500 in 1942 on this basis. The petitioner was on the cash basis and reported as his gross income for 1942 and 1943 only the royalties actually received by him in those years. It is impossible to reconcile, with petitioner's present position, this failure to return as 1942 income the royalties here under discussion, amounting to some

---

[1] SEC. 107. COMPENSATION FOR SERVICES RENDERED FOR A PERIOD OF THIRTY-SIX MONTHS OR MORE AND BACK PAY.

\* \* \* \* \* \*

(b) PATENT, COPYRIGHT, ETC.—For the purposes of this subsection, the term "artistic work or invention", in the case of an individual, means a literary, musical, or artistic composition of such individual or a patent or copyright covering an invention of or a literary, musical, or artistic composition of such individual, the work on which by such individual covered a period of thirty-six calendar months or more from the beginning to the completion of such composition or invention. If, in the taxable year, the gross income of any individual from a particular artistic work or invention by him is not less than 80 per centum of the gross income in respect of such artistic work or invention in the taxable year plus the gross income therefrom in previous taxable years and the twelve months immediately succeeding the close of the taxable year, the tax attributable to the part of such gross income of the taxable year which is not taxable as a gain from the sale or exchange of a capital asset held for more than 6 months shall not be greater than the aggregate of the taxes attributable to such part had it been received ratably over that part of the period preceding the close of the taxable year but not more than thirty-six calendar months.

\* \* \* \* \* \* \*

$5,000. If they were capable of being determined and were then considered to have been constructively received, they should have been returned in 1942. *H. A. Eckhard*, 12 T. C. 384, reversed on other grounds, 182 F. 2d 547.

To constitute constructive receipt, the income must be credited to the taxpayer's account without restriction or set aside for his use under his unrestricted control. *Pedro Sanchez*, 6 T. C. 1141, affd. 162 F. 2d 58. Such is not the case here. The monies received by the publishers upon the sale of the books were not set aside or credited to the petitioner's account without restriction in 1942. No accounting was called for by the contract or made until April 1943. Nor was the petitioner vested with an unrestricted right to the royalties in 1942 by other means as in *James J. Cooney*, 18 T. C. 883.

As above noted, the contract between the petitioner and his publisher gave the petitioner no right to royalties in 1942 in excess of the $1,000 advanced. This contract was neither abrogated nor amended. If the petitioner did not possess the right to demand the royalties until the following year, the doctrine of constructive receipt cannot apply in 1942. *J. D. Amend*, 13 T. C. 178. It is true that the publisher allowed the petitioner's agents to withdraw sizable amounts from the 1942 sales receipts as advances to accommodate the taxpayer. However, neither the publishing firm nor its president agreed at any time to pay more than $1,000 in 1942 and no understanding existed that the petitioner could withdraw any specific amount beyond that which he actually received. Were there such an agreement with the president of the publishing firm this assurance would not be tantamount to corporate action without steps being taken to bind the corporation. *Van W. Peabody*, 5 T. C. 426. Moreover, the petitioner did not acquire the right unqualifiedly to demand the royalties even if such a promise or understanding existed. *Avery v. Commissioner*, 292 U. S. 210.

The petitioner was able to obtain the advances in excess of $1,000 in 1942 solely because of the willingness of the publisher, in its volition, to allow the withdrawals. It was a purely gratuitous arrangement. Petitioner could not have demanded them as a matter of right. The publishing firm could, at any time, refuse the petitioner's request and the taxpayer would have been without legal basis for challenging the action. The petitioner points out that none of his requests for advances were refused but this fact does not establish an unrestricted right to funds which he did not receive.

We conclude that the petitioner did not receive, constructively or otherwise, the 80 per cent of the income specified by Congress for purposes of section 107 (b), I. R. C. For this reason we need not extend this discussion into the other requisites of the statute.

*Decision will be entered under Rule 50.*