BASIL F. BASILA AND M. FRANCES BASILA, PETITIONERS, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 61738.   Filed April 20, 1961.

*C. A. L. Johnstone, Jr., Esq.*, for the petitioners.
*Frederick T. Carney, Esq.*, for the respondent.

FISHER, *Judge*: The respondent has determined a deficiency in peti-
tioners' income tax for the year 1952 of $66,817.10.   In the determina-
tion of the deficiency, the respondent stated in his deficiency notice as
follows: "It is determined that you constructively received income of
$91,692.24 which should have been reported on your income tax re-
turn for 1952, rather than 1953."

The sole question presented is whether Basil F. Basila, one of the
petitioners herein, constructively received from a company of which
he was an officer and principal shareholder, the amount of $91,692.24
(or any part thereof) during the year 1952.

#### FINDINGS OF FACT.

Some of the facts were stipulated by the parties.   They are found
accordingly and incorporated herein by this reference.

Petitioners Basil F. Basila and M. Frances Basila, husband and
wife, resided in Leakesville, Mississippi, during the year 1952.   For

the taxable year 1952, they filed a joint Federal income tax return with the director of internal revenue in Jackson, Mississippi. During the taxable year 1953, petitioners resided in Mobile, Alabama, and filed a joint Federal income tax return for that year with the director of internal revenue in Birmingham, Alabama. Petitioners reported their income on the cash basis for both calendar years 1952 and 1953.

During the years 1952 and 1953, Basil F. Basila (hereinafter sometimes referred to as petitioner) was the president, treasurer, and general manager of the Basila Manufacturing Company (hereinafter referred to as the company). M. Frances Basila, his wife, was the secretary and Jack Russell was its vice president. Basila owned approximately 70 percent of the stock of the company. Basila and his wife both had authority to write checks on company funds. The record does not disclose the membership of the board of directors of the company or who owned the remaining shares during the period in issue.

Petitioner's written contract of employment with the company provided for payment of a base salary of $95 per week plus a bonus of 45 percent of the net earnings of the company, determined according to a formula set forth in the written contract as follows:

The bonus shall be payable annually and the annual computation thereof shall be made as of the close of business on October 31, and shall be paid to the Second Party [Basila] sixty-five (65) days thereafter, either in cash or by note or part cash and balance by note, negotiable in form and due and payable on or before six months, together with interest thereon at the rate of four per cent per annum, and acceptance of such payment and settlement shall be final and binding upon both of the parties thereto.

A written employment contract between the company and Jack Russell, the vice president, contained the same provisions as the portions of petitioner's contract mentioned above, except that Russell's bonus was fixed at 20 percent of the net earnings.

For the company's fiscal year ending October 31, 1952, eight employees of the company were also entitled to receive bonuses from the company in addition to basic weekly salaries. The employment contracts of these eight employees provided for bonuses calculated and to be paid in a method similar to those of Basila and Russell, except that three of the employees were to be paid not later than 75 days after October 31 instead of the 65-day provision in the other contracts.

During the month of October 1952, before the amount of the bonuses was calculated, advance payments totaling $80,970.13 were made to Basila, Russell, and seven of the employees. Petitioner received a check for $35,000 and was discharged from a $3,000 indebtedness to the company. The record does not disclose who signed these checks.

During the audit of the company's books between the middle of November and the middle of December 1952, the accountant determined the amounts of the employee bonuses for the fiscal year ending October 31, 1952, as follows:

Basila _____ $129, 692. 24
Russell _____ 57, 640. 99
Eight other employees_____ 44, 441. 21

 Total_____ 231, 774. 44

The accountant at this time determined the amount which should be withheld from the bonuses when the bonuses were paid. The amount to be withheld from the employees' bonuses was determined from the Government table, and the accountant credited 20 percent of the employees' bonuses to the withholding account. Basila and Russell, however, orally requested the accountant to estimate what their total tax liability would be because of the bonus and withhold that amount from their bonuses. This estimate was based upon the basic salaries of the husbands and wives in 1952, their entire bonus, and estimated other income and deductions.

The records and the income tax returns of the company were based upon an accrual method of accounting. In the adjusting entries made by the accountant during the audit, the total amount of the bonuses, $231,774.44, was debited to the profit and loss account and two liability accounts were set up and credited. They are summarized as follows:

Accrued withholding tax:
Basila _____ $82, 957. 92
Russell _____ 27, 782. 14
Other employees_____ 8, 888. 25

 Total_____ 119, 628. 31
Contractual bonuses payable:
Basila _____ 46, 734. 32
Russell _____ 29, 858. 85
Other employees_____ 35, 552. 96

 Total_____ 112, 146. 13

The item of accrued withholding tax as of October 31, 1952, was segregated as an accrual on the books of the company by the accountant because the audit statements were to be presented for credit purposes, and, in accordance with generally accepted accounting principles, taxes were shown separately on the audit statement as a preferred claim. The items were also segregated to instruct the company as to the method of payment.

The sum of the advance payments in 1952 of $88,728.89 (which included the $38,000 paid to petitioner) was then debited to the con-

tractual bonuses payable account, leaving a total balance in the account as of December 31, 1952, of $23,417.24. Of this figure the amount of $8,734.32 represented petitioner's share.

During January 1953, a bank loan of $109,000 was negotiated by the company and $24,017.24 was paid as the remainder due on the bonuses payable. Petitioner's balance due of $8,734.32 was paid to him by check on January 3, 1953.

The audit report was completed and sent to the company on December 22, 1952.

The withholding from petitioner's bonus in the amount of $82,957.92 was paid by the company to the Government on February 14, 1953, and reported as withholding from 1953 income.

The statement of the company's current asset and liability position as of December 31, 1952, and January 31, 1953, is as follows:

BASILA MFG. CO., INC.

STATEMENT OF LIQUID ASSETS AND LIABILITIES PER LEDGER ACCOUNTS ON DEC. 31, 1952, AND JAN. 31, 1953.

|  | Dec. 31, 1952 | | Jan. 31, 1953 | |
|---|---|---|---|---|
| Liquid assets: | | | | |
| Cash on hand and in bank | | $122,776.98 | | $135,746.41 |
| Trade accounts receivable | $112,729.48 | | $128,770.94 | |
| Less allowance for discounts | 8,497.81 | 104,231.67 | 9,781.12 | 118,989.82 |
| Sundry receivables and claims | | 2,178.69 | | 2,628.39 |
| Total liquid assets | | 229,187.34 | | 257,364.62 |
| Liabilities: | | | | |
| Notes payable, bank | | —0— | | 109,000.00 |
| Accounts payable, trade | | 27,320.86 | | 55,541.72 |
| Contractural bonuses payable | | 23,417.24 | | —0— |
| Accrued income taxes | 144,741.33 | | 95,279.94 | |
| United States withholding taxes | 121,925.30 | | 118,436.71 | |
| Accrued payroll taxes | 2,797.15 | | 1,270.52 | |
| Accrued sales taxes | 22.70 | 269,486.48 | —0— | 214,987.17 |
| Total liabilities | | 320,224.58 | | 370,528.89 |
| Deficiency of liquid assets over liabilities | | 91,037.24 | | 113,164.27 |

On petitioners' original joint return for the calendar year 1952, the only compensation which Basila reported as being received from the company was his basic salary. On March 9, 1954, petitioners filed an amended return for the year 1952 which added as income the sum of $38,000 which Basila received from the company in 1952. There was not reported on the return any amount of withholding as being attributable to this amount, nor did the corrected W-2 form indicate that any amount had been withheld because of the payment. The amount of $16,870.80 tax shown to be payable by the amended return was paid March 9, 1954, with interest due.

In petitioners' joint return for the calendar year 1953, Basila reported as income the balance he received on the net bonus of $8,734.32, and the total amount of the withholding account of

$82,957.92. This latter amount was reported on the W-2 form as being withheld from 1953 income and was applied in reduction of petitioners' 1953 tax liability.

OPINION.

As of December 31, 1952, the company's books reflected a net bonus payable to petitioner of $8,734.32, and withholding tax payable on behalf of petitioner in the amount of $82,957.92. Respondent has determined that the total amount of these two accounts, $91,692.24, was constructively received by petitioner in the year 1952. Petitioner contends that the contract under which he was to receive the bonus provided that it was not due and payable until January 4, 1953 (65 days after October 31, 1952); that the amount was not set aside for his unrestricted use; and that, albeit he had the power to write checks on company funds, he did not have the right to do so in 1952 because of the contract, especially since the company was in a low cash position at the end of the year.

It is respondent's position that the company had ample funds, or it could have easily borrowed sufficient funds to pay the entire bonus in 1952, and that petitioner, as majority shareholder, could have written a check to himself for the balance at any time after October 31, 1952, without being bound by the contract. Alternatively, respondent contends that, albeit petitioner was originally bound by the contract, subsequent actions had modified it allowing petitioner to have taken payment before the due date.

There are separate accounts of the company purporting to reflect the bonus payments and the withholding payments attributable thereto. For discussion purposes, we turn first to the bonus payments reflected by the bonus payable account.

Section 29.42-2, Regs. 111, provides in part:

> To constitute receipt in such a case the income must be credited or set apart to the taxpayer without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is to be made, and must be made available to him so that it may be drawn at anytime, and its receipt brought within his own control and disposition. * * *

The test laid down in the regulations for determining the application of the doctrine of constructive receipt has long been followed by this Court. See *George W. Johnson*, 25 T.C. 499 (1955), *Robert J. Dial*, 24 T.C. 117 (1955), *Hal E. Roach*, 20 B.T.A. 919 (1930), and *C. E. Gullett*, 31 B.T.A. 1067 (1935). In the latter case we said (p. 1069):

> It is clear that the doctrine of constructive receipt is to be sparingly used; that amounts due from a corporation but unpaid, are not to be included in the income of an individual reporting his income on a cash receipts basis unless it appears that the money was available to him, that the corporation

was able and ready to pay him, that his right to receive was not restricted, and that his failure to receive resulted from exercise of his own choice. * * *

Therefore, in each case involving a deferral of compensation, a determination of whether the doctrine of constructive receipt is applicable must be made upon the basis of the specific factual situation involved. In the light of the above cases, we must determine whether petitioners' share of the amounts credited to the bonus payable account was set apart and unequivocally made subject to petitioner's demand, disposition, or benefit without any substantial limitation thereon during the taxable year 1952.

Under the doctrine of constructive receipt, a taxpayer may not deliberately turn his back upon income and thereby select the year for which he will report it. Nor may a taxpayer, by a private agreement, postpone receipt of income from one taxable year to another after the income comes within his control. *Richard R. Deupree*, 1 T.C. 113 (1942). However, when money is not due to be paid under the contract granting taxpayer the income, the terms of the contract are to be given effect in the absence of some supervening reason not present in the instant case. See *Clifton B. Russell*, 5 T.C. 974 (1945), appeal dismissed 154 F. 2d 829 (C.A. 1, 1946).

It is apparent that under the provisions of the employment contract, petitioner was not entitled to any amount of the bonus until January 4, 1953. Indeed, respondent concedes this. Respondent also concedes that a taxpayer does not constructively receive income under a contract until the obligor becomes liable to pay it, even though the obligor is willing and able to make the payment before that date. His main contentions, however, are that the contract was "modified" by subsequent action of the parties or that the contract should be disregarded entirely as petitioner was the controlling shareholder.

The only crediting or setting apart of any income by the company in 1952 was done by the independent certified public accountant in the course of his annual audit of the company's books, in setting up as accrued liabilities as of the end of the company's fiscal year, the bonuses to be paid in 1953 to officers and employees. No funds were actually set aside or earmarked for the bonus in 1952 (but $38,000 was in fact paid to petitioner in that year). The liability for these bonuses accrued during the fiscal year ending October 31, 1952, and principles of sound accounting required that the amounts be accrued and deducted from the income for that period. The fact that liability accounts are credited and expenses are deducted by an accrual basis debtor does not establish that there is income to a cash basis creditor. *Robert A. Henningsen*, 26 T.C. 528, 536 (1956), affd. 243 F. 2d 954 (C.A. 4, 1957). The amount so credited must still be subject to the taxpayer's unqualified demand before he will have been deemed to

have constructively received the income. See *James F. Oates*, 18 T.C. 570 (1952), affd. 207 F. 2d 711 (C.A. 7, 1953).

The contract did not require payment until 65 days after October 31, and under its terms, petitioner could not have required payment prior to the expiration of the 65 days, which, in the instant case, fell in 1953. We hold, therefore, that (except for the $38,000 advance, which petitioner admits was taxable income to him in 1952, and the amount which we find, *infra*, was constructively received by petitioner in 1952) the balance of the bonus payments does not represent taxable income to petitioner for 1952. *James Gould Cozzens*, 19 T.C. 663, 666 (1953).

Respondent places much emphasis on the fact that petitioner was the controlling shareholder and that any contract between himself and the corporation could be modified at his will. We do not think respondent's premises support his conclusion. There was a substantial minority interest which could have acted to prevent such action by petitioner. The fact is, moreover, that he did not do so, and the contract bound him as originally enacted, except as to the advances and amount constructively received in 1952, discussed later.

While the petitioner had the power to write company checks and was the dominant shareholder, this did not allow him to dispose of corporate assets in a manner inconsistent with company contracts. Moreover, it is apparent the cash position of the company as of the end of 1952 was such that any further advances would not have been in the best interests of the company. The current liabilities of the company exceeded the current assets by $91,037.24 at the end of 1952, and the evidence of the account was to the effect that the company was in a tight cash position. This is substantiated by the fact that the company found it necessary to negotiate a bank loan in the amount of $109,000 in January of 1953.

Respondent's contention that the company could have paid the bonuses earlier by borrowing money is immaterial. The fact remains that the company did not borrow sooner and was under no obligation to do so since the balance of the bonuses was not yet due.

Respondent's argument that as majority shareholder, petitioner was not bound by the contract and could have taken any income of the company is untenable. The argument that the principle of constructive receipt comes into action with the mere possession of the power (as opposed to the right) to receive funds extends the principle to unwarranted limits and has been rejected by the courts on numerous occasions. *C. E. Gullett, supra; Hyland v. Commissioner*, 175 F. 2d 422 (C.A. 2, 1949), affirming a Memorandum Opinion of this Court; *Robert J. Dial, supra*.

From the evidence before us we hold that petitioner did not have the unrestricted right to demand payment before the date provided

therein, and the power to have done so did not give him such right. We hold, therefore, that petitioner did not constructively receive in 1952 the balance due on the bonus in 1953.

The next question is whether the $82,957.92, being the amount of the withholding tax, or any part thereof, was constructively received by petitioner in 1952, although paid by the company in 1953 as withholding from 1953 income. We think it clear that the amount of the withholding tax related to the $38,000 advance in 1952, computed under section 1622(a) of the 1939 Code, was constructively received by taxpayer in 1952.

Petitioner concedes that the $38,000 advanced to him in October of 1952 represented income to him for that year. It is also clear that any compensation (including a bonus) actually or constructively received by petitioner was subject to withholding. Sec. 405.101, Regs. 116. The $38,000 was voluntarily paid by the corporation to the petitioner in 1952 and was voluntarily received by him in that year. It must be presumed that petitioner and the corporation knew the law, and that their actions and understandings are to be examined in the light of such presumed knowledge. This includes the knowledge that compensation was subject to withholding (sec. 1622(a), Code of 1939) and that payment of $38,000 to petitioner as compensation presupposed actual compensation in a total amount which exceeded $38,000 by the amount required to be withheld.

Section 3661 of the 1939 Code provides, in part:

Whenever any person is required to collect or withhold any internal-revenue tax from any other person and to pay such tax over to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States. * * *

Section 405.401, Regs. 116 (which we think is a proper implementation of the statute), states, in part:

The entire amount of the wages from which the tax is withheld shall be included in gross income in the return required to be made by the recipient of the income without deductions for such tax. The tax withheld at source, however, is allowable as a credit against the tax imposed by Chapter 1 of the Internal Revenue Code upon the recipient of the income. If the tax has actually been withheld at the source, credit or refund shall be made to the recipient of the income even though such tax has not been paid over to the Government by the employer. * * *

The clear implication from the foregoing is that the sum of $38,000 represented only the net advance or bonus paid in 1952, but that the total representing compensation for 1952 reportable by petitioner (in addition to his basic salary, not here in issue) was an amount which included, in addition to the $38,000, the tax required to be withheld under section 1622(a) in connection with the bonus paid or advanced.

Whether or not the company complied with all of the formalities required by the law and regulations is immaterial. It is clear under sections 1622(a) and 3661 that the company was required to withhold and that the amount withheld is a special fund in trust for the United States. Whatever the book entries may show, we must presume that the company complied with the law in substance and that petitioner is to be deemed aware of the withholding requirement. The fact that the taxes withheld were not actually paid over to the Government until 1953 does not alter the situation.

It has been stated many times by the courts that construction and administration of the tax laws are to be approached in a practical way. The view which we take implements the law in a practical way consistent with the intent of Congress as evidenced by the applicable statutes. To accept petitioner's approach would, in many instances, enable taxpayers, at their whim, to shift income from one year to another in their own interests.

Under the circumstances of the instant case, we must infer a practical withholding in 1952 of the amount required to be withheld under section 1622(a) and the amount of such withholding in 1952 must be deemed to have been constructively received by petitioner and includible in his gross income for that year. Failure of the corporation to comply with some of the requirements of the law, including payment of the entire withholding tax in 1953 instead of payment of part in 1952, cannot, under the circumstances here presented, defeat the basic requirement of the law.

Respondent would have us go further and determine the amount deemed to be constructively received by petitioner in 1952 by apportioning to the $38,000 an additional amount of withholding taxes computed under section 1622(k) as implemented by the provisions of section 405.213, Regs. 116.[1] We agree that the regulation is a rea-

---

[1] Sec. 405.213. Additional withholding.—

In addition to the tax required to be deducted and withheld in accordance with the provisions of section 1622, the employer and employee may agree, with respect to wages paid on or after November 1, 1951, that an additional amount shall be withheld from the employee's wages. The agreement shall be in writing and shall be in such form as the employer may prescribe. The agreement shall be effective for such period as the employer and employee mutually agree upon; however, unless the agreement provides for an earlier termination, either the employer or the employee, by furnishing a written notice to the other, may terminate the agreement effective with respect to the first payment of wages made on or after the first "status determination date" (January 1 and July 1 of each year) which occurs at least 30 days after the date on which such notice is furnished.

The amount deducted and withheld pursuant to an agreement between the employer and employee shall be considered as tax required to be deducted and withheld under section 1622. All provisions of law and regulations applicable with respect to the tax required to be deducted and withheld under section 1622 shall be applicable with respect to any amount deducted and withheld pursuant to the agreement.

The amount deducted and withheld pursuant to an agreement between the employer and employee, together with the tax required to be deducted and withheld under section 1622, shall be reported on Form W-2 and on Form 941 as Federal income tax withheld from wages.

sonable and proper implementation of the statute, but we cannot agree with the effect which would be accorded to it by respondent. There was no agreement in writing by the employer and petitioner that an additional amount be withheld, and the company (employer) was not, therefore, required by law to withhold any tax for 1952 in addition to the amount to be computed under section 1622(a). Under the circumstances, we find no basis for holding that petitioner constructively received in 1952, in relation to the bonus payments, any amount in excess of that computed under section 1622(a).

*Decision will be entered under Rule 50.*