W. W. MILLSAPS and LUCILLE MILLSAPS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Millsaps v. Commissioner
Docket No. 1771-72.
United States Tax Court
T.C. Memo 1973-146; 1973 Tax Ct. Memo LEXIS 141; 32 T.C.M. (CCH) 694; T.C.M. (RIA) 73146; July 2, 1973, Filed Ben Ferrell Mitchel, for the petitioners. Richard J. Neubauer, for the respondent. Dawson
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined a deficiency of $5,614.25 in petitioners' Federal income tax for the taxable year 1967. 2 Petitioners have conceded two adjustments to income made by the respondent for cotton sales (139.50) and interest expense ($385.30). They have offered no evidence with respect to an increase of $504.38 in rental income for 1967. The only issue presented for our decision is whether the petitioner W. W. Millsaps constructively received the sum of $14,500 as farm rent in 1967 rather than in 1968 when he included it in his income. FINDINGS OF FACT W. W. Millsaps and Lucille Millsaps, the petitioners herein, are husband and wife *142 whose legal residence was in Boyle, Mississippi, when they filed their petition in this proceeding. They filed a joint Federal income tax return for the taxable year ended December 31, 1967, with the Southeast Service Center at Chamblee, Georgia. In that return they reported gross income of $29,749.36, which included a net farm profit of $14,131.95. W. W. Millsaps (herein called petitioner) was engaged in several pursuits. One of them was farming. After he harvested his 1966 crop the petitioner decided to retire from the business of farming. His 1966 crop was sold in early 1967. As a cash basis taxpayer, he reported and paid tax on such income in 1967. In February 1967, the petitioner orally agreed to rent some of his farmlands to three brothers, J. C. McClure, J. R. McClure and 3 Douglas McClure. The rent for the year was $14,500. Petitioner and the McClures agreed that the rent for 1967 would be paid after January 1, 1968.
The McClures worked the land and by October 1967 had substantially completed their harvesting. They had received the proceeds from the sale of the crops during October 1967. This was in contrast to the petitioner's experience the previous year *143 when the crops were harvested in 1966 and sold early in 1967. In the latter part of October 1967, the McClures told the petitioner of their successful year and indicated their ability to pay the rent at that time. Petitioner would not accept the rent, but instead reminded the McClures of their agreement, i.e., the 1967 rent was to be paid in 1968 and not before. He told them they might consider putting the rent money in "escrow." In order to protect themselves against the possibility of a landlord's lien, the McClures wanted to pay the 1967 rent. To do so, however, would have breached their agreement with the petitioner. On October 30, 1967, the McClures went to the Cleveland State Bank to find some way to avoid any possibility of a landlord's lien attaching to their crops. The McClures were unsure of the exact nature of an "escrow" account and asked a teller at the bank about it. The teller consulted with the bank president who drafted a 4 letter of instructions directed to the bank to be signed by the McClures. This letter reads, in pertinent part, as follows: We [the McClures] enclose herewith three checks totaling $14,500 * * * payable to Mr. Millsaps and drawn *144 on our individual accounts with you. Kindly convert these into Cashier's checks payable to Mr. Millsaps and hold in trust for delivery to him on January 2, 1968.
Kindly acknowledge your acceptance of these intructions direct to Mr. Millsaps. The letter was signed by the McClure brothers and a notation accepting the terms thereof was made by N. L. Cassibry, the president of the bank. On October 31, 1967, a cashier's check in the amount of $14,500 was drawn and made payable to the petitioner. It was held by the bank. The McClures' checks cleared the bank in the normal course of business. The bank notified the petitioner that it was holding the rent payment in "trust" pursuant to the McClures' explicit instructions. On January 2, 1968, the cashier's check was mailed to the petitioner who endorsed it and deposited it in his personal checking account in the Bank of Cleveland on January 8, 1968. The full amount ($14,500) was reported by petitioners as income on their Federal income tax return for 1968. ULTIMATE 5 FINDINGS The cashier's check in the amount of $14,500 was not available to petitioner without limitation or restriction prior to January 2, 1968, because *145 the Cleveland State Bank, as agent for the McClures, would not have delivered the check to petitioner before that date. Therefore, the $14,500 was not constructively received by the petitioner in the taxable year 1967. OPINION It is settled law that income which is subject to a taxpayer's unfettered command and which he is free to enjoy at his own option is taxed to him as his income whether he sees fit to enjoy it or not. See Corliss v. Bowers, 281 U.S. 376 (1930); Loose v. United States, 74 F.2d 147, 150 (C.A. 8, 1934); and Ralph Romine, 25 T.C. 859 (1956). The doctrine of constructive receipt is applied where a cash basis taxpayer is presently entitled to money which is made immediately available to him and his failure to receive it is due entirely to his own volition.The test of taxability is not the actual receipt of income but the present right to receive it. Irish v. Commissioner, 129 F.2d 468 (C.A. 3, 1942), affirming 43 B.T.A. 864 (1941). In other words "a taxpayer may not deliberately turn his back upon income and thus select the year for which he will report it." *146 Hamilton National Bank of Chattanooga, Administrator, 29 B.T.A. 63, 67 (1933); Cecil Q. Adams, 20 B.T.A. 243 (1930), affirmed 54 6 F.2d 228 (C.A. 1, 1931). Since the doctrine of constructive receipt is in a sense a fiction which serves to tax income not in fact actually received, it has been cautiously and sparingly applied. See Hal E. Roach, 20 B.T.A. 919 (1930); C. E. Gullett, 31 B.T.A. 1067, 1069 (1935); Howard Veit, 8 T.C. 809 (1947); and James F. Oates, 18 T.C. 570 (1952), affirmed 207 F.2d 711 (C.A. 7, 1953). Section 1.451-2, Income Tax Regs., which sets forth the general guidelines as to the constructive receipt of income, provides: Income although actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt *147 is subject to substantial limitations or restrictions. Where there is a "bona fide contract providing for deferred payments * * * [it will] be given effect notwithstanding that the obligor might have been willing to contract to make such payments at an earlier time." Ray S. Robinson, 44 T.C. 20, 36 (1965). The bona fides of any such contract, oral or written, is a question of fact. See Avery v. Commissioner, 292 U.S. 210 (1934); R. E. Hughes, Jr., 42 T.C. 1005 (1964); and Oliver G. Willits, 50 T.C. 602, 613 (1968). We are satisfied that the oral contract between the petitioner and the McClures was bona fide and that it was not changed 7 by the unilateral actions taken by the McClures in late October 1967. We reject respondent's notion that this was a sham, prearranged by the petitioner. Ray S. Robinson, supra at 36. Whether money is subject to the taxpayer's demand without qualification or restriction is also a question of fact. Avery v. Commissioner, supra; *148 James Gould Cozzens, 19 T.C. 663 (1953). We find that the petitioner had no control over the money until it was released by the Cleveland State Bank on January 2, 1968. He had no right to receive it in 1967.
Respondent refers to Oliver G. Willits, supra, where the issue of constructive receipt was present in each of the two years. Drawing the "thin line" so necessary in these situations, this Court found constructive receipt in one year and no such receipt in the other. Respondents points out that the commissions were not paid to the trustees until the later year with respect to the issue won by the taxpayer. That is the case here. The McClures did not pay the petitioner in 1967. They paid the money to the bank with specific instructions to hold it in "trust" for delivery to the petitioner on January 2, 1968, in accordance with the prior oral agreement they made with him in February 1967 when they leased his land. By contrast, the trustees in Willits were all accommodating each other. They were personally indifferent as to when their cotrustees received 8 their commissions. Thus they were willing to agree to a plan believed to afford a tax savings *149 to one of their members. The interest of the McClures, on the other hand, was adverse in some respects to the petitioner's interest. By paying the rent in 1967 they could avoid any possibility of a landlord's lien on their crops. Payment to the bank protected them from this and at the same time did not cause them to breach their agreement with the petitioner. No adverse consequences may be drawn from the fact that the McClures received some advice from the petitioner on a possible way of setting aside the rent money which was due after January 1, 1968. The "escrow" arrangement was between the McClures and the Cleveland State Bank. They established the conditions under which the money would be held and subsequently paid to the petitioner. The bank acted as an agent for the McClures and not for the petitioner. See Leo A. Woodbury, 49 T.C. 180, 196 (1967). Mr. Cassibry, the bank president, considered the agreement with the McClures as binding and would not have unilaterally paid the money to the petitioner in advance of the date agreed upon. There was no agreement to accept payment in 1967 in contravention of the oral contract. Cf. *150 McEuen v. Commissioner, 196 F.2d 127 (C.A. 5, 1952), cited by respondent. Neither was there a solicitation of offers, an acceptance and subsequent modification to 9 fit a certain tax mold. See Williams v. United States 219 F.2d 523 (C.A. 5, 1955). The original oral agreement with the McClures contained all the operative conditions - none of which were in any way altered by the parties. If, in fact, the petitioner had wanted to change his original oral agreement with the McClures, perhaps they would have agreed to a modification. However, the facts reveal that the petitioner did not want to change his contract. Without more, the independent actions of the McClures and the bank did not make the bank an agent of the petitioner, thus giving him the legal right to demand payment of the money in 1967. The agreement with the bank restricted petitioner's right to the rent money until January 2, 1968. See J. D. Amend, 13 T.C. 178 (1949). It is our view that the essential requirements of constructive receipt are missing in this case. Accordingly, we hold that the petitioner did not constructively receive the rent money in 1967. It was correctly *151 reported in his income for 1968. To reflect the conceded adjustments and our conclusion with respect to the disputed issue, Decision will be entered under Rule 50.