J. D. Amend, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Eva Amend, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 18860, 18861. Promulgated August 8, 1949.

*Dorothy Ann Kinney, Esq.*, and *Walter G. Russell, C. P. A.*, for the petitioners.

*Allen T. Akin, Esq.*, for the respondent.

OPINION.

BLACK, *Judge*: We have two taxable years before us for decision, 1944 and 1946. The year 1945 is not before us because the Commissioner has determined an overassessment as to each petitioner for that year.

In each of the taxable years there is one common issue and that is whether the doctrine of constructive receipt should be applied to certain payments which petitioner received from the sale of his wheat. There is no controversy as to the amounts which petitioner received or as to the time when he actually received them. Petitioners, being on the cash basis, returned these amounts as part of their gross income in the years when petitioner actually received them. As heretofore explained, the Commissioner has refused to accept petitioner's treatment of the payments and has applied the doctrine of constructive receipt and determined that such amounts were income of the prior years. Other adjustments were made in the determination of the deficiencies, but these are not contested.

In applying the doctrine of constructive receipt, the Commissioner relies upon Regulations 111, section 29.42–2, printed in the margin.[1]

In *Loose* v. *United States*, 74 Fed. (2d) 147, the rule providing for the taxation of income constructively received is stated as follows:

\* \* \* the strongest reason for holding constructive receipt of income to be within the statute is that for taxation purposes income is received or realized when it is made subject to the will and control of the taxpayer and can be, except for his own action or inaction, reduced to actual possession. So viewed, it makes no difference why the taxpayer did not reduce to actual possession. The matter is in no wise dependent upon what he does or upon what he fails to do. It depends solely upon the existence of a situation where the income is fully available to him. \* \* \*

Respondent, in his brief, relies upon the *Loose* case, from which the above quotation is taken, and several other cases which deal with the doctrine of constructive receipt. Needless to say, each of those cases

---

[1] SEC. 29.42–2. INCOME NOT REDUCED TO POSSESSION.—Income which is credited to the account of or set apart for a taxpayer and which may be drawn upon by him at any time is subject to tax for the year during which so credited or set apart, although not then actually reduced to possession. To constitute receipt in such a case the income must be credited or set apart to the taxpayer without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is to be made, and must be made available to him so that it may be drawn at any time, and its receipt brought within his own control and disposition. A book entry, if made, should indicate an absolute transfer from one account to another. If a corporation contingently credits its employees with bonus stock, but the stock is not available to such employees until some future date, the mere crediting on the books of the corporation does not constitute receipt.

depends upon its own facts. In the *Loose* case, for example, interest coupons had matured prior to the decedent's death. The decedent had not presented them for payment because of his physical condition. It was held that, even though the decedent had not cashed them, the interest coupons represented income to him in the year when they matured, under the doctrine of constructive receipt.

It seems clear to us that the facts in the instant case do not bring it within the doctrine of *Loose* v. *United States, supra,* and the other cases cited by respondent dealing with constructive receipt.

In discussing the situation which we have in the instant case, we turn our attention first to the contract of sale which petitioner made of his 1944 wheat crop to Burrus. The testimony was that 1944 was a bumper wheat crop year and that petitioner produced and harvested about 30,000 bushels, some of which was lying out on the ground and some of which was stored on the farm. Petitioner, through his attorney in fact, Paul Higgs, sold this wheat to Burrus for January 1945 delivery at $1.57 per bushel. It was the understanding that petitioner would ship his wheat to Burrus at once and that Burrus would pay him for it in January of the following year. The contract was carried out. Some time during the month of August 1944, after August 2, petitioner shipped the 30,000 bushels to Burrus. Burrus received it, put it in its elevator, and paid petitioner for it by check dated January 17, 1945.

Respondent's contention seems to be based primarily on the fact that petitioner could have sold Burrus the wheat at the same price for immediate cash payment in August 1944 and that although he did not do so, he should be treated in the same manner as if he had and the doctrine of constructive receipt should be applied to the payments received. We do not think the doctrine of constructive receipt goes that far. Porter Holmes, who was the manager of the Burrus Panhandle Elevator in Amarillo at the time of the 1944 transaction, testified at the hearing. He testified that it was the usual custom of Burrus to pay cash for wheat soon after it was delivered and that the transaction between Burrus and petitioner for January 1945 delivery and settlement was unusual and that he telephoned the manager at Dallas, Texas, for authority to make the deal that way and secured such authority and the deal was made. He testified that when Burrus' check for $40,164.08 was mailed to petitioner January 17, 1945, it was done in pursuance of the contract. So far as we can see from the evidence, petitioner had no legal right to demand and receive his money from the sale of his 1944 wheat until in January 1945. Both petitioner and Burrus understood that to be the contract. Such is the substance of the testimony of both petitioner, who was the seller of the wheat, and Holmes, who acted for the buyer. Such also is the testimony of

Paul Higgs, who represented the seller in the negotiations for the sale. During 1944 all that petitioner had in the way of a promise to pay was Burrus' oral promise to pay him for the wheat in January 1945. Burrus was a well known and responsible grain dealer and petitioner testified that he had not the slightest doubt that he would receive his money in January 1945, as had been agreed upon in the contract. Such a situation, however, does not bring into play the doctrine of constructive receipt. See *Bedell* v. *Commissioner*, 30 Fed. (2d) 622, wherein the court said:

> While, therefore, we do not think that the case is like a promise to pay in the future for a title which passes at the time of contract, we would not be understood as holding by implication that even in that case the profit is to be reckoned as of the time of sale. If a company sells out its plant for a negotiable bond issue payable in the future, the profit may be determined by the present market value of the bonds. But if land or a chattel is sold, and title passes merely upon a promise to pay money at some future date, to speak of the promise as property exchanged for the title appears to us a strained use of language, when calculating profits under the income tax. * * * it is absurd to speak of a promise to pay in the future as having a "market value," fair or unfair. * * *

The doctrine that a cash basis taxpayer can not be deemed to have realized income at the time a promise to pay in the future is made was reiterated by the Circuit Court of Appeals for the Eighth Circuit in the more recent case of *Perry* v. *Commissioner*, 152 Fed. (2d) 183. In that case it was stated:

> These cases seem to be predicated upon the fact that in a contract of sale of property containing a promise to pay in the future, but not accompanied by notes or other unqualified obligations to pay a definite sum on a day certain, the obligation to pay and the obligation to pass title both being in the future, there is an element of uncertainty in the transaction and the promise has no "market value", fair or unfair. This theory is supported by the decision of the Supreme Court in *Lucas* v. *North Texas Co.* * * *

The Commissioner in the instant case is not contending that Burrus' contract to pay petitioner for his wheat in January 1945 had a fair market value equal to the agreed purchase price of the wheat when the contract was made in August 1944. What he is contending is that petitioner had the unqualified right to receive his money for the wheat in 1944; that all he had to do to receive his money was to ask for it; and that, therefore, the doctrine of constructive receipt applies as defined in section 29.42–2, Regulations 111.

For reasons already stated, we do not think the Commissioner's determination to this effect can be sustained. If petitioner had begun this method of selling his wheat in 1944, when he had a bumper crop, there might be reason to doubt the *bona fides* of the contract, but what we have said about the 1944 transaction between Burrus and petitioner is based upon the finding that the contract between Burrus

and petitioner was bona fide in all respects, though it was initiated by petitioner, and each party was equally bound by its terms. Petitioner did not begin this method of selling his wheat in 1944—he began it in 1942 and continued it through 1946. No doubt his taxes were more in some years and less in others than they would have been if petitioner had sold and delivered his wheat for cash in the year when it was produced. To illustrate this we need only point out that under the method which petitioner used he reported income in 1945 upon which he paid a tax of $2,672.64. His wife Eva also reported income and paid a tax of about the same amount. By treating petitioner's proceeds from the sale of his 1944 wheat as constructively received in 1944, the Commissioner determined overassessments as to each petitioner for 1945 and deficiencies against each petitioner for 1944.

Petitioner was asked at the hearing why he adopted the manner of selling his wheat which has been detailed in our findings of fact. His answer was as follows:

Well, that had been my practice, to handle that wheat that way since 1942 and I have handled my wheat that way, '42, '43, '44, '45, '46, '47 and into 1948. It is still my practice to do that and there have been some years in that interval that I would certainly have paid less income had I handled it the other way, but that is a semi-arid country and we are uncertain about our wheat crops and our expenses are always pretty well set and we know they are going to be high and we need for our own protection to carry part of this wheat forward.

*     *     *     *     *     *     *

As I have already explained, it's been a matter of making my income more uniform and even; about five of those years had it all been set back and sold in the year that it was supposed to have been sold in, my income tax would have been less and in the other two it would have been more. I merely emphasize that to show the consistency of my policy and not as a matter of paying any tax.

Whether the reasons advanced by petitioner in his testimony quoted above are good or bad as a business policy, we do not undertake to decide. The question we think we have to decide is whether the contracts detailed in our findings of fact were bona fide arm's-length transactions and whether under them the petitioner had the unqualified right to receive the money for his wheat in the year when the contracts were made and whether petitioner's failure to receive his money was of his own volition. Our conclusion, as already stated, is that the contracts were bona fide arm's-length transactions and petitioner did not have the right to demand the money for his wheat until in January of the year following its sale. This being true, we do not think the doctrine of constructive receipt applies. See *Howard Veit*, first point decided, 8 T. C. 809.

Petitioner, in each of the years before us, returned as a part of his gross income the checks which he actually received in payment for his wheat. This being so, we think he complied with the income tax

laws governing a taxpayer who keeps his accounts and makes his returns on the cash basis.

We have discussed in detail above only the sale which petitioner made of his wheat to Burrus in August 1944. The sale of his 1945 and 1946 wheat was made to Coffee-Davis Grain Co. under substantially the same circumstances as the sale to Burrus and it need not be separately discussed. For the sale of his 1946 wheat, petitioner received a check for $17,774.28, dated January 4, 1947, from the Coffee-Davis Grain Co. Petitioners returned the amount of that check in their 1947 income tax returns. It is this latter check that the Commissioner put back in petitioners' 1946 income under the doctrine of constructive receipt. For the same reasons that we have held that the Commissioner erred in applying the doctrine of constructive receipt to the payment which petitioner received from Burrus in 1945, we hold that he erred in applying the doctrine of constructive receipt to the check for $17,774.28 which petitioner received from Coffee-Davis Co. in January 1947.

*Decisions will be entered under Rule 50.*