OPINION. Black, Judge: Both petitioners reported their income on a cash receipts and disbursements basis and during the taxable years each petitioner reported in his net income the amount of terminal commissions received in cash from Northwestern, namely, $1,000 per month for 7 months in 1944, and $1,000 per month during all of 1945 and 1946. Prior to the termination of their general agency contract with Northwestern, petitioners elected to defer under the terms of an amended contract until subsequent taxable years the receipt of a portion of the terminal commissions which would otherwise become due and payable to them under the terms of the old contract. During the years 1944, 1945, and 1946, the commissions so deferred under this amended contract amounted to $33,174.98, $60,754.62, and $41,858.80, respectively, and the respondent has determined these amounts to be income taxable one-half to each petitioner in the respective taxable years in addition to the income which each petitioner reported on his return. The question presented here is whether the petitioners are taxable on only the $1,000 per month received by each petitioner under the agency contract, as amended, or are they taxable on the entire amount of commissions which would have become due and payable under the terms of the old contract. Since petitioners, who were cash basis taxpayers, did not during the taxable years receive in cash the commissions in controversy they contend that respondent erred in determining that the deferred commissions constituted taxable income to them during the years 1944,1945, and 1946. Respondent in determining that the full amount of the commissions here involved was taxable to petitioners whether actually received or not, stated in his deficiency notice: * * * This is in accordance with the provisions of sections 22 (a) and 42 of the Internal Revenue Code. It is further held that the so-called Amendment of April 27, 1944 to your general agent’s contract, which is an authorization to the insurance company to remit to you after retirement such renewal commissions as you may he entitled to under that contract, in a certain manner, has no effect on the taxability of such income. Sections 22 (a) and 42 of the Code upon which the Commissioner relies are printed in the margin.[2] In our findings of fact we have endeavored to give in considerable detail the facts with reference to the transactions with which we are here concerned and it is not necessary to repeat those facts. A brief summary of them will suffice. For a good many years the taxpayers had been general agents in Chicago for Northwestern. Northwestern had an agreement with their general agents to pay them commissions on renewal premiums collected. As long as the general agents remained in active business the level of these commissions from year to year remained fairly constant. This was because new business written by the general agency would fairly take the place of old business which might not be renewed, or where death intervened, of course, the premiums would stop. However, when these general agents reached the retirement age and new business stopped coming in to them, the bulk of their renewal commissions would be collected in the first five years after retirement and along about the ninth year the collections would dwindle off to practically nothing. Some of the retired agents who happened to live until reaching these lean years of retirement were left at times in distress. So Northwestern, after considerable consultation and negotiation with its general agents working through their association, reached an agreement whereby a plan was adopted so that when a general agent should retire he might get his renewal commissions paid as under the old plan, or he might agree to have them spread over a certain number of years, not to exceed 15, receiving a certain amount of equal monthly payments. This latter plan, having once been elected, could not be changed after the general agent’s retirement. The petitioners herein when they retired elected to receive their renewal payments over a period of not to exceed 180 months at $1,000 per month. In the taxable year 1944 each received $7,000, in 1945 each received $12,000, and in 1946 each received $12,000. Each petitioner returned his full amount for taxation and has been taxed on it. The Commissioner has added to these amounts the renewal premiums which he has determined were accrued to these two taxpayers during the three taxable years after deducting the amounts paid to them in cash. It is undoubtedly true that at the time Hobart and Oates reached the retirement age as general agents of Northwestern they could have retained their rights under the old contract and had they done so would have received their renewal commissions in the years when collected by Northwestern and would have been taxable thereon in the year of receipt. However, under the arrangement which had been worked out by Northwestern and its general agents through their association, petitioners at the time of their retirement had the right to amend their contract so as to spread the term of payment of their commissions over a term of not to exceed 180 months, instead of the 9-year period as provided under the old contract. Oates and Hobart elected the latter method of payment. At the time of their retirement nothing was due them on these renewal commissions. Of course, it was well known judging from the past experience of Northwestern with its general agents that considerable amounts would be due Oates and Hobart as commissions out of these renewal premiums. How much would be due could not be definitely foreseen at the time of their retirement. Petitioners contend that being on the cash receipts basis, they would have to return as taxable income only the amounts which they actually received in each of the taxable years from Northwestern. They strongly rely on our decisions in Kay Kimbell, 41 B. T. A. 940, and Howard Veit, 8 T. C. 809. We think these two decisions are in point in favor of petitioners’ contentions. In the Kimbell and Veit cases, both supra, an original contract had been made providing for future payments under a specific formula. In both cases, prior to the time when such amounts were determined and prior to the time the taxpayer had acquired any right to receive them, the parties entered into new contracts which amended the terms of the preexisting contracts and the contract amendments were made before the date on which definite Tights had come into being under the prior contract. There was a new agreement in each instance as to how the company would make payments in discharge of its liability if, as, and when such liability for payment arose. In the KimbeTl case, supra, we said: * * * The issue turns on the recognition to be given the second oral agreement * * *. It is only by giving recognition to the first oral agreement * * * that the respondent has any semblance of reason for his determination * * *. If the parties had a right to make the first oral agreement, they had a right to make the second, and our only concern is whether these agreements actually existed and were intended as real, genuine, bona fide agreements between the parties. The agreements are supported by uncontradieted testimony of reputable and credible witnesses. * * * we know of no reason why * * * fun legal effect should not be accorded the second oral agreement * * * which was entered into prior to the date that any of the * * * payments in question were to begin. * * * * * * we think the question at issue is controlled by the second oral agreement, which we hold to be entirely valid, * * * It is respondent’s contention that the KimbeTl and Veit cases, both supra, are distinguishable on their facts. It is true, of course, that there are differences in the facts in those cases from the facts which we have in the instant case, but we think the principle which was involved in our decisions in the KimbeTl and Veit cases was the same as we encounter in the instant case and we follow them and decide the issue which we have here in favor of the petitioners. Cf. J. D. Amend, 13 T. C. 178, appealed to Fifth Circuit and appeal dismissed by the Commissioner. Respondent in contending that the amounts in question are taxable to petitioners under section 22 (a) largely relies on Lucas v. Earl, 281 U. S. 111, Eelvering v. Eubank, 311 U. S. 122, and Eelvering v. Horst, 311 U. S. 112. We fail to see where those cases have any application here. Those are cases where the income had been assigned to another and the taxpayer was contending that the assignment relieved him of taxation on the income and that the income was taxable to the one to whom it had been assigned. We have no such question here. Petitioners are making no contention that the commissions credited to their accounts by Northwestern in the taxable years will not be taxable to them if and-.when they receive them. Their contention is that under their amended contracts which were signed prior to their retirement they were not entitled to receive any more than they did in fact receive and that being on the cash basis they can only be taxed on these amounts and that the remainder will be taxed to them if and when received by them. For reasons already stated, we have sustained that contention. Reviewed by the Court. Decisions will be entered under Bule 50. Sec. 22. GROSS INCOME. (a) General Definition. — “Gross income” includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid * * * Sec. 42. PERIOD IN WHICH ITEMS OF GROSS INCOME INCLUDED. (a) General Rule. — The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period. * * *