Henry Bruce Bowen and Elna Baggett Bowen v. Commissioner.
Bowen v. Commissioner
Docket No. 69048.
United States Tax Court
T.C. Memo 1959-124; 1959 Tax Ct. Memo LEXIS 125; 18 T.C.M. (CCH) 551; T.C.M. (RIA) 59124; June 15, 1959
*125 Petitioner, who was president and sole shareholder of Bruce Bowen, Inc., was indebted to the corporation for sums which it had advanced at petitioner's request and on petitioner's behalf, which he intended to repay. These advances were exhibited by the corporation on its books as an account receivable in the name of petitioner. As of June 29, 1954, the debit balance in this account was $26,743.84. On June 30, 1954, a journal entry was made debiting petitioner's salary account in the amount of $12,000, and a credit to the account receivable of $12,000 was posted. After the crediting of the $12,000, the debit balance was $14,743.84. On December 24, 1954, petitioner executed a promissory demand note to the corporation in the amount of the then existing debit balance, namely, $14,723.84. All subsequent debits and credits to this account receivable were added to or subtracted from the remaining debit balance after the posting of the $12,000 credit. Held, the $12,000 salary credited to the debit balance on the corporation's account receivable in petitioner's name constituted taxable income to petitioner in 1954. W. J. Oven, Jr., Esq., Box 122, Tallahassee, Fla., and Victor M. Cawthon, Esq., for the petitioners. Fred H. Steffey, Esq., for the respondent. FISHER
Memorandum Findings of Fact and Opinion FISHER, Judge: Respondent determined a deficiency in the income tax of petitioners for the taxable year 1954 in the amount of $3,093.72. The principal issue for decision is whether respondent erred in including in petitioner Henry B. Bowen's 1954 income, the amount of $12,000 which had been credited to an account receivable in his name on the books of a corporation of which he was president and sole shareholder. The pleadings also raise the issue of the proper amount to be allowed as a medical expense deduction in the year 1954. The disallowance by respondent of a portion of the medical payments claimed by petitioners results solely from his redetermination of petitioner's adjusted gross income. Accordingly, *127 the resolution of this issue depends on our decision relative to the primary issue stated above. Findings of Fact Some of the facts have been stipulated, and, to the extent so stipulated, are incorporated herein by this reference. Petitioners Henry Bruce Bowen and Elna Baggett Bowen are husband and wife residing in Quincy, Florida. They filed a joint income tax return for the taxable year 1954 with the district director of internal revenue at Jacksonville, Florida, which return was prepared on the cash receipts and disbursements method. Prior to July 1, 1953, Henry B. Bowen (hereinafter referred to as petitioner or Bowen) operated a sole proprietorship, the principal business of which was building construction. On or about July 1, 1953, a corporation known as Bruce Bowen, Inc., (hereinafter sometimes referred to as the corporation) was organized under the laws of the State of Florida with an authorized capital stock of 1,000 shares of no-par common stock. Bowen, on or about July 1, 1953, transferred a substantial portion of the assets of his sole proprietorship to the corporation, which assumed a substantial portion of the liabilities of the sole proprietorship. The assets *128 transferred to the corporation by Bowen exceeded the liabilities of Bowen, which it assumed, by $2,680.46. The corporation issued 750 shares of nopar common stock to petitioner on or about July 1, 1953, which shares are shown on the corporation's books as having a cost basis of $2,680.46. No other shares of stock have been issued by the corporation. Under date of July 1, 1953, petitioner executed a demand promissory note in the amount of $15,000 payable to the corporation. Interest on the note was stated to be 10 per cent per annum. No entry on the books of the corporation has ever been made reflecting the existence of the $15,000 note dated July 1, 1953; no demand for payment has been made by the corporation on this note; and no payments of interest have ever been made by petitioner to the corporation relative to this note. The corporation commenced business operations on or about July 1, 1953. Petitioner was the president and active manager of the corporation. The records of the corporation were maintained on the basis of a fiscal year ending June 30, and the accrual method of accounting was employed. The first corporation income tax return of Bruce Bowen, Inc., was filed *129 with the district director of internal revenue at Jacksonville, Florida, for the fiscal year ended June 30, 1954, which return reflected the accrual method of accounting. For the fiscal year ended June 30, 1954, the corporation maintained on its books a general ledger account titled "Accounts Receivable, 'H. B. Bowen.'" During the period July 1, 1953, to June 29, 1954, inclusive, this account receivable was credited in the total amount of $5,832.34. These credits consisted of rentals collected for petitioner aggregating $1,200; cash payments by petitioner of $4,239.46; and adjustments of $392.88. During the period July 1, 1953, to June 29, 1954, inclusive, this account receivable was debited in the total amount of $32,576.18. These debits consisted of wage payments to petitioners' maid, Norma, aggregating $1,040; payments on houses completed by petitioner totaling $1,803.36; advances on behalf of petitioner on the "Tyndall Field Job" totaling $2,310.70; cash withdrawals by petitioner aggregating $27,240.69, including a $7,000 payment on the 1953 personal income taxes of petitioner and a payment of $1,580.15 on petitioner's personal residence; and adjustments of $181.43. As *130 of June 29, 1954, the account titled "Accounts Receivable, 'H. B. Bowen,'" had a debit balance on the books of the corporation of $26,743.84. It was petitioner's intention to repay the corporation for these personal advances from corporate funds. On June 30, 1954, a journal entry was made on the books of the corporation debiting an account entitled "Officers' Salaries" in the amount of $12,000, and a credit to the account titled "Accounts Receivable, 'H. B. Bowen,'" in the amount of $12,000 was entered. A notation was made in connection with these entries to the effect that they were to record the salary of petitioner for the period January 1, 1954, to June 30, 1954, inclusive. These entries were made by the secretary of the corporation pursuant to instructions issued by L. D. Quentin, a certified public accountant, at the time of the formation of the corporation, which instructions were to the effect that petitioner should be credited with a salary of at least $12,000 for the fiscal year of the corporation ended on June 30, 1954, if he had not drawn it. These instructions were made in the presence of petitioner who offered no objection thereto. These instructions were never revoked *131 by either Quentin or the petitioner. After the posting of the $12,000 credit from the journal where the salary payment was recorded to the account titled "Accounts Receivable, 'H. B. Bowen,'" on June 30, 1954, that account had a debit balance of $14,743.84. On the original income tax return of the corporation for the fiscal year ended June 30, 1954, a deduction was taken in the amount of $15,816.49 for accrued overhead expenses allocable to contracts completed during the fiscal year. Included in this deduction was a pro rata portion of the $12,000 salary credited to the account titled "Accounts Receivable, 'H. B. Bowen.'" The Internal Revenue Service, in auditing this return, allowed the deduction claimed by the corporation for the accrued overhead expenses. Under date of July 30, 1954, Lawrence D. Quentin, a certified public accountant, rendered to Bruce Bowen, Inc., an audit report covering the fiscal year ended June 30, 1954. Included in this audit report was a balance sheet of Bruce Bowen, Inc., for June 30, 1954, which balance sheet listed as one of the "Other assets of Bruce Bowen, Inc.," and "Account Receivable - Stockholder" having a debit balance of $14,743.84 as of *132 June 30, 1954. The statement of income included in this audit report reflected overhead expenses attributable to completed contracts of $15,816.49, which figure included an allocable portion of the $12,000 salary credited to the account of petitioner during the fiscal year ended June 30, 1954. The balance sheet in this audit report reflected a deficit in earned surplus of $73,640.25. This deficit in earned surplus was created by subtracting from the corporation's net income, after taxes, for the fiscal year ended June 30, 1954, a reserve for anticipated losses on contracts in the amount of $74,219.25, which reserve was never entered on the books of Bruce Bowen, Inc. During the period July 1, 1954, to December 31, 1954, inclusive, the account titled "Accounts Receivable, 'H. B. Bowen,'" was debited in the total amount of $900 and was credited in the total amount of $900. Thus, as of December 31, 1954, the account had a debit balance of $14,743.84. [1] The debits to the account consisted of wage payments to petitioners' maid, Norma, aggregating $300, and a cash withdrawal by petitioner of $600. All of the credits to the account resulted from rental collections for petitioner. *133 On December 24, 1954, the account titled "Accounts Receivable, 'H. B. Bowen,'" had a debit balance of $14,723.84. On this date petitioner executed the non-interest bearing, demand promissory note in the face amount of $14,723.84 to Bruce Bowen, Inc. This note was executed to evidence the indebtedness due from petitioner to the corporation as indicated by the balance as of that date in the account titled "Accounts Receivable, 'H. B. Bowen.'" No entry on the books of the corporation has ever been made reflecting the existence of this $14,723.84 note, and no demand for payment of this note has ever been made to petitioner by the corporation. This note was executed by Bowen at the request of the accountant, Lawrence D. Quentin, in an amount which Quentin told petitioner was the "balance on the books." During the period July 1, 1954, to December 31, 1954, the corporation made cash payments of salary to petitioner of $5,000. These salary payments were as follows: Month
Amount
July
$1,000
August
1,000
September
1,000
October
1,000
November
400
December
600
Total
$5,000 This $5,000 salary was reported on petitioners' joint income tax return for the taxable *134 year 1954. During the period January 1, 1955, to June 12, 1955, inclusive, the account titled "Accounts Receivable, 'H. B. Bowen,'" was credited in the total amount of $15,557.19. These credits consisted of collection of rentals for petitioner aggregating $900; payments to oil companies of $803.13; repayment of advance on "Church of God" job of $3,832.31; miscellaneous payments aggregating $1,000.69; deposits in the Quincy State Bank aggregating $1,020; payment by petitioner for a note payable of Bruce Bowen, Inc., to the Quincy State Bank, upon which petitioner was an endorser, of $7,000; and a transfer to the corporation of $1,000. During the period January 1, 1955, to June 12, 1955, inclusive, the account titled "Accounts Receivable, 'H. B. Bowen,'" was debited in the total amount of $4,611.51. These debits consisted of payments to petitioners' maids, Norma and Effie, aggregating $354.20; a payment to Eastern Air Lines of $425; and an advancement to petitioner in connection with the "Church of God" job of $3,832.31. As of June 12, 1955, the account titled "Accounts Receivable, 'H. B. Bowen,'" had a debit balance of $3,798.22. On June 13, 1955, the account titled "Accounts *135 Receivable, 'H. B. Bowen,'" was credited in the amount of $17,717.69. This credit resulted from the payment by petitioner of a note payable of the corporation to the Quincy State Bank upon which petitioner was an endorser. Immediately after the crediting of the $17,717.69 to the account titled "Accounts Receivable, 'H. B. Bowen,'" on June 13, 1955, the account had a credit balance of $13,919.47. During the period June 14, 1955, to June 30, 1955, inclusive, the account titled "Accounts Receivable, 'H. B. Bowen,'" was credited in the amount of $13,750. This credit resulted from the payment by petitioner of a note payable of the corporation to the Quincy State Bank upon which petitioner was an endorser. During this same period, this account receivable was debited in the total amount of $41.00, which debits consisted of payments to petitioners' maid, Effie. As of June 30, 1955, the account titled "Accounts Receivable, 'H. B. Bowen,'" had a credit balance of $27,628.47. Under date of July 23, 1955, Lawrence D. Quentin and Cecil R. Blake, certified public accountants, rendered to Bruce Bowen, Inc., an audit report covering the fiscal year ended June 30, 1955. Included in this audit *136 report was a balance sheet for Bruce Bowen, Inc., for June 30, 1955, which balance sheet reflected a deficit of $162,389.87. The balance sheet included in this audit report also reflected a deferred liability in the amount of $27,628.47 which was noted as being "Due Stockholder." No part of the $12,000 salary credited to the account titled "Accounts Receivable, 'H. B. Bowen,'" on June 30, 1954, was reported as income on the joint tax return of petitioner for the taxable year 1954. The $12,000 salary credited on June 30, 1954, to the account receivable maintained in the name of petitioner Henry Bruce Bowen on the books of Bruce Bowen, Inc., constituted taxable income to him during the taxable year 1954. Opinion Respondent has determined that the sum of $12,000 which was credited to an account receivable due from petitioner to his wholly owned corporation, which credit respondent contends represents a salary payment, is taxable income to petitioner in 1954. Petitioner, of course, takes the contrary view. Stripped to its essentials, the facts present a not uncommon situation in the area of wholly owned or closely held corporations where corporate funds are used for the personal *137 desires of its controlling or only shareholder, which the shareholder intends to repay to the corporation. In the instant case, the mechanical device used to exhibit this procedure was a corporate "account receivable" in the name of petitioner. During the period from July 1, 1953, to June 30, 1954, inclusive, petitioner received advances from his wholly owned corporation which were carried on the books of the corporation as an account receivable and which petitioner intended to repay. As of June 29, 1954, the debit balance in this account was $26,743.84. On June 30, 1954, the account was credited in the amount of $12,000, which item was noted in the corporate journal as salary to petitioner. The debit balance in the account receivable as of June 30, 1954, was $14,743.84. No entry was made in the account receivable prior to December 31, 1954, restoring the $12,000 indebtedness cancelled by the salary credit on June 30, 1954. On December 24, 1954, petitioner executed a demand note payable to the corporation in the amount of $14,723.84, which petitioner testified was executed on the advice of his accountant to cover "the balance on the books." This note was not entered on the books *138 of the corporation. In the next taxable year of petitioner (1955), and in the new fiscal year of the corporation (July 1, 1954, to June 30, 1955), new debits and credits were posted to the account receivable in petitioner's name. The credits resulted primarily from the payment by Bowen to the Quincy State Bank of corporate notes on which he was an endorser. At the end of the corporation's fiscal year June 30, 1955, the credit balance in the account receivable was $27,628.47. This figure results from the debits and credits to the account receivable from July 1, 1954, to June 30, 1955, which total follows from the debit balance of $14,743.84 as of June 30, 1954. [2]
At the trial and on brief, petitioner has approached this case on the premise that the doctrine of constructive receipt is the pith of the matter. He strenuously argues (1) that Bowen did not know until September 1955 that the credit was even on the books; (2) that the corporation was in serious financial difficulty in June 1954 and *139 June 1955; he states that the corporation did not, in fact, have funds to pay him a $12,000 salary; (3) that the note of $14,723.84 was a repayment of the salary before the end of his taxable year, and that the $15,000 note given the corporation on July 1, 1953, was more than the $12,000 credit. His final argument concerns the payment by Bowen of monies on corporate notes on which he was an endorser. These payments, he argues, were, in fact and in law, repayments, though in a subsequent year, of the advances made on his behalf and at his behest. This Court has, in many cases, discussed the doctrine of constructive receipt. Richard R. Deupree, 1 T.C. 113 (1942); J. D. Amend, 13 T.C. 178 (1949); George W. Johnson, 25 T.C. 499 (1955). From these and other cases, it may fairly be said that the underlying idea of this doctrine is to be applied where a cash basis taxpayer is presently entitled to money, which money is made immediately available to him, and his failure to receive it in cash is due entirely to his own volition. See also 2 Mertens, "Law of Federal Income Taxation," sec. 10.01. It is apparent that in the instant case the $12,000 credit *140 on the corporation's account receivable in the name of petitioner was applied in partial payment of his outstanding obligation to the corporation. Thus, it is not a question of constructive receipt but rather of whether petitioner has actually received income. E. T. Sproull, 16 T.C. 244 (1951), affd. 194 Fed. (2d) 541 (C.A. 6, 1952). The issue before us is whether petitioner derived economic or financial benefit from this $12,000 credit which represented compensation. To ask the question is to answer it. His debt to the corporation, which he testified he intended to repay, was reduced to the extent of $12,000. It is obvious that petitioner realized income as compensation for services to the extent of the $12,000 credit in the taxable year in which it was credited. Reginald Denny, 33 B.T.A. 738 (1935); 2 Mertens, "Law of Federal Income Taxation," sec. 11.19. We now examine petitioner's contentions in the light of the above discussion rather than as they were advanced relating to constructive receipt. Throughout the following discussion, one point should be kept clearly in mind - the $12,000 credit did reduce petitioner's liability on the *141 books of the corporation, and all subsequent debits and credits to that account were added to or subtracted from the balance of $14,743.84, which was the balance after the crediting of the $12,000. We turn to petitioner's contentions in detail. We will discuss only those which have some bearing on the issue as we have presented it. Those contentions which deal only with the doctrine of constructive recepit need not be discussed. Petitioner contends that the note he executed for $14,723.84 was, in fact, a repayment of the salary item. This note, coupled with the one dated July 1, 1953, for $15,000, exceeded the total debit balance even if the $12,000 credit had never been entered. Neither note was made to repay the $12,000 credit. The $14,723.84 note was in the amount of the debit balance after crediting the account receivable with $12,000, and was executed on the advice of the corporate accountant (who was also petitioner's personal accountant) to evidence the then existing debit balance. [3] The $15,000 note had nothing to do with the credit. It was executed at the inception of the corporation, at the accountant's suggestion, to cover payment by the corporation of future personal *142 bills of petitioner. It was never reflected on the books of the corporation. Petitioner testified that he first learned about the $12,000 credit in September 1955 after the Internal Revenue Service had begun an audit of his returns. Petitioner's testimony on this point is not convincing. It is also at odds with his explanation that the $14,723.84 note was a repayment of the salary item. Petitioner was the active manager of the corporation and signed the returns as president. At the time of the formation of the corporation, he was present when his accountant, Quentin, instructed the corporate secretary, who was also the bookkeeper, to enter a minimum salary of $12,000 per year for petitioner on the corporate books if he did not draw a greater salary. Petitioner raised no objection to these instructions and they were never rescinded. The audit reports submitted by the accountant to petitioner showing the corporation's financial position as of June 30, 1954, carried an account entitled "Account Receivable - Shareholder" having a debit balance of $14,743.84. The income statement contained in this audit report reflected overhead expenses attributable to *143 completed contracts of $15,816.49, which figure included an allocable portion of the $12,000 salary credited to petitioner's account. This latter expense was also reported on the corporation's return for the fiscal year ended June 30, 1954, which expense was allowed by the Internal Revenue Service as a business deduction. Certainly, when he executed the note for $14,723.84 to cover the then existing debit balance, he had a full opportunity to inquire into and ascertain how that debit balance was arrived at. This is especially significant where the drawings by petitioner were so large as to have a debit balance prior to the $12,000 credit of $26,743.84. Any failure of petitioner to make appropriate inquiry must be attributed to his own neglect. Petitioner's final contention applicable to this issue is that the $12,000 credit was a mere bookkeeping error, and that the entry should never have been made. The contention is actually a rationalization or argument based on the financial problems of the corporation rather than on the facts relating to the entry of the credit. Moreover, in so far as it relates to the ability of the corporation to have paid petitioner's salary in cash, the *144 contention is not significant because the $12,000 credit effected a reduction of a debt to the corporation and was not a cash payment. The picture painted by petitioner in his testimony would have us assume that he, although the active manager and sole stockholder of the corporation, followed blindly the dictates of the corporation's accountant and exerted no influence or control over the accountant's acts. Thus, petitioner testified that the accountant, at the formation of the corporation, gave the corporation's secretary the instructions relative to the crediting of petitioner's salary on the books at $12,000, if not previously drawn. He emphasizes the fact that the accountant prepared the financial statements of the corporation as well as the returns of the corporation for the fiscal years 1954 and 1955 and the personal return of petitioner for 1954. He further testified that it was the accountant who advised him to execute the note of $14,723.84, as well as the $15,000 note executed at the time of the formation of the corporation. If any financially disinterested person or persons could shed light on the motives and procedures of the $12,000 credit (relating to the claim that *145 it was a mere bookkeeping error), such persons were the accountant and the secretary of the corporation. The transaction was within the special knowledge of these persons, but neither of them was called by petitioner to give testimony at the trial of this case and no reason for their absence was offered. We may fairly infer under the circumstances that if they had given testimony, it would not have aided petitioner's position. Interstate Circuit v. United States, 306 U.S. 208 (1939); 31 C.J.S. sec. 156. On the basis of the evidence in the record, we hold that respondent correctly determined petitioner's income in 1954. His determination of the medical expense deduction arising from the resultant increases in petitioner's adjusted gross income is likewise approved. Decision will be entered under Rule 50. Footnotes
1. The apparent discrepancy between the debit balance of December 24, 1954, the date of the note, and December 31, 1954, $20of results from a debit posted on December 31, 1954, of $20, which was a payment by the corporation to petitioners' maid, Norma, which is included in the total debits of $900 from June 30, 1954, to December 31, 1954. As of December 24, 1954, the debit balance was, in fact, $14,723.84.↩
2. From June 30, 1954, to December 31, 1954, there had been a washout of $900 of debits and credits which are in no wise material to the principles involved. See Footnote 1, supra.↩
3. See Footnote 1, supra.↩