**Bobby WARREN and Modelle Warren,
Plaintiffs-Appellees,**

v.

**UNITED STATES of America,
Defendant-Appellant.**

No. 78–1433.

United States Court of Appeals,
Fifth Circuit.

March 14, 1980.

M. Carr Ferguson, Asst. Atty. Gen., Richard W. Perkins, Atty., Gilbert E. Andrews, Act. Chief, Appellate Sect., James A. Riedy, Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., for defendant-appellant.

Crenshaw, DuPree & Milam, John R. Crews, Lubbock, Tex., for plaintiffs-appellees.

Before GEWIN, RUBIN and SAM D. JOHNSON, Circuit Judges.

SAM D. JOHNSON, Circuit Judge.

This is a refund action brought by the Warrens for the recovery of federal income taxes for the years 1969 and 1970. The question before us is whether sale proceeds received by cotton gins for the taxpayers are properly included in the taxpayer's gross income for the years in which the sales were made.

Bobby and Modelle Warren are Texas cotton growers using the cash receipts and disbursements method of accounting for tax purposes. In 1969 and 1970 they took their cotton to the Cotton King Gin and the Sand Gin Company.

These gins, in addition to ginning and baling, also arranged sales of the cotton for producers interested in selling. The gin obtained prices from a number of prospective buyers and relayed the information to the producer. When a producer was satisfied with a price, he could authorize the gin to sell the cotton and obtain the proceeds of the transaction. As an additional option, the producer could instruct the gin to "defer" the cotton. When cotton was "deferred" the purchase price was paid directly to the gin and not to the producer; the proceeds of the sale were retained by the gin and were not transferred to the producer until the following year. In return for the gins services, the buyer of the cotton paid the gin a set fee based solely upon the bales obtained. The producer paid the gin only for the actual ginning of the cotton.

The Warrens followed this procedure with both the Cotton King Gin and the Sand Gin Company [1] in the years 1969 and 1970. Their cotton was sold in November and December of both years. King Gin deposited the sale proceeds for the Warrens' cotton in its own account and issued a check to the Warrens on January 2nd of the following year. Sand Gin Company deposited the funds in an escrow account at Lamesa National Bank. On January 2, 1970, the bank issued a check to the Warrens for their sale proceeds.

In reporting their income from 1969 and 1970, the Warrens did not include these sales proceeds. The sale proceeds for each year were included in the following year's tax return. After an audit, the IRS determined the proceeds should have been included in the Warrens' income for the year in which the sale occurred. The Warrens paid the tax deficit and sought a refund. The IRS disallowed their claim and in May, 1976, suit was filed by the Warrens in the Northern District of Texas.

The case was tried to a jury in August, 1977. The United States moved for a directed verdict during trial, and the motion was denied. The jury retired with four special interrogatories, and returned a verdict for the Warrens. After final judgment for the Warrens was entered, the United States filed a motion for judgment notwithstanding the verdict or for a new trial. This motion was denied and this appeal was instituted.

Section 451 of the Internal Revenue Code provides that income is to be included in gross income for the taxable year in which received by the taxpayer. Even so, courts are often called upon to determine exactly when a taxpayer is deemed to have "received" income. One doctrine that has been adopted for the resolution of these disputes

---

1. The Warrens only used the Sand Gin in 1969.

is the proposition that receipt by an agent is receipt by the principal. *Maryland Casualty Co. v. United States,* 251 U.S. 342, 346, 40 S.Ct. 155, 156, 64 L.Ed. 297 (1920). The government's contention throughout this dispute has been that the gins were the Warrens' agents.

The government raises two points of error on appeal. It argues initially that the district court erred in not granting either the motion for a directed verdict or the motion for judgment n.o.v. Alternatively, the appellants contend that the trial court erred in instructing the jury. We agree with the government's first contention and reverse.

The standard to be applied by a district court when passing on a motion for directed verdict or judgment n.o.v. is well settled. "If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper." *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir. 1969) (en banc). Our review of the record supports the United States' argument that there is no conflict in substantial evidence— the gins were the Warrens' agents for the sale of cotton.

 The primary function of the Cotton King Gin and the Sand Gin was to gin, bale and prepare the cotton for sale. Secondarily, as a service for its customers, the gins would also help find buyers. The evidence shows that in performing this secondary function for the Warrens, the cotton gins were serving as their agents. The Warrens decided that the gins should help sell the cotton. The gins then solicited bids from various buyers. This information was relayed to the Warrens. At that point the appellees decided whether to instruct the gins to accept the highest bid offered or to wait for a better price. When they decided to sell, the Warrens also had the option of receiving their monies immediately or instructing the gins to hold the proceeds until

the following year. It was the Warrens' decision to defer payments.

The relationship between the Warrens and the gins for the purpose of selling the cotton was indisputably that of principal and agent. The Warrens instructed the gins to solicit bids, the Warrens decided whether to accept the highest price offered, and the Warrens determined whether or not to instruct the gins to hold the proceeds from the sale until the following year. The gins' role in the sale of the cotton was to adhere to the appellees' instructions. The Warrens were the owners of the cotton held for sale; the Warrens were in complete control of its disposition.

This case is distinguishable from *Kasper v. Banek,* 214 F.2d 125 (8th Cir. 1954) and *Amend v. Commissioner,* 13 T.C. 178 (1949). In those cases it was recognized that proceeds from the sale of a crop by a farmer, pursuant to a bona fide arms-length contract between the buyer and seller calling for payment in the taxable year following delivery, are includable in gross income for the taxable year *in which payment is received.*[2] In the case at bar the bona fide arms-length agreement was not between the buyer and seller but rather between the seller and his agent. The Warrens' decision to have the gins hold the sales proceeds until the following year was a self-imposed limitation, not a part of the sales transaction between the buyer and seller. Such a self-imposed limitation does not serve to change the general rule that receipt by an agent is receipt by the principal. *See Williams v. United States,* 219 F.2d 523 (5th Cir. 1955). The income was received by the Warrens' agents in the year of the sale. The fact that the Warrens restricted their access to the sales proceeds does not change the tax status of the money received.

Since we conclude that the district court erred in not granting the government's motions for a directed verdict or for judgment n. o. v., we do not address the alleged error in the jury instructions. For the reasons

---

**2.** The Treasury Department has reached the same result. Rev.Rul. 58–162, 1958–1 Cum. Bull. 234.

stated above, the judgment entered by the district court is

REVERSED.