**James H. and Mary BUSBY,**
**Plaintiffs-Appellants,**

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

**V. O. and Neva D. BUSBY,**
**Plaintiffs-Appellants,**

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

**Nos. 81–1226, 81–1227.**

United States Court of Appeals,
Fifth Circuit.

June 24, 1982.

Durant, Mankoff, Davis & Wolens, Ronald M. Mankoff, C. M. Meadows, Jr., Dallas, Tex., for plaintiffs-appellants.

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Richard W. Perkins, R. Russell Mather, Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellee.

Before CLARK, Chief Judge, THORNBERRY and GARZA, Circuit Judges.

GARZA, Circuit Judge:

This is a refund action brought by the Busbys for the recovery of federal income

taxes paid for the year 1973. The sole issue on this appeal is whether the trial court properly granted judgment n. o. v. in favor of the United States. We find that it did not.

Appellants, the Busbys, are Texas cotton growers using the cash receipts and disbursements method of accounting for tax purposes. In 1972 they harvested a crop which they then sold in 1972. Unfortunately, they were unable to collect the proceeds from that sale until 1973 because of collection difficulties. When the 1973 crop came in, the taxpayers wished to avoid the greatly increased tax liability they would have suffered had they received the proceeds for the 1973 crop in the same year they received the proceeds from the 1972 crop. To accomplish this, appellants sought to defer payment.

The Busbys negotiated the sale of their 1973 crop to the Texana Cotton Company through the Farmers Coop Association of Springlake. Although the Farmers Coop is a gin owned by the farmers that use it,[1] it also operated as purchasing agent for Texana for which it received a commission of a dollar per bale.[2] Once a deal was completed, Texana had authorized the gin to sign drafts on its behalf in payment for the cotton.

From the very beginning, the Busbys had emphasized the importance of deferred payment and conditioned the sale upon it. The gin agreed to take care of the matter and, thereafter, contacted the Olton State Bank and established an irrevocable escrow account. Under the terms of the agreement,[3] Texana was to deposit the proceeds of the sale into the escrow account following the delivery of the cotton. Once in, the appellants had no right to receive the monies held by the bank until 1974. In addi-

tion, the Busbys were not entitled to receive any incidental benefits from the account such as interest or the issuance of a letter of credit.[4] In compliance with the agreement, the funds were subsequently transferred out of the escrow account into appellants' account in January of 1974.

Taxpayers reported the proceeds of their 1973 crop on their 1974 income tax returns. After being audited, however, the Commissioner determined that those proceeds should have been reported in 1973, the year in which the proceeds were deposited into the escrow account, and asserted deficiencies against the Busbys for 1973 in excess of $120,000. Taxpayers paid those asserted deficiencies and brought the instant action seeking a refund of the taxes paid. At the close of the evidence, the court submitted two interrogatories to the jury. The first asked the jury to determine whether the gin was acting as the agent of Texana or the Busbys; the jury answered that it was the agent of Texana. The second interrogatory asked the jury to determine whether the deferral agreement was an arms-length transaction; they felt that it was.

The government subsequently filed a motion for judgment n. o. v. or, alternatively, for a new trial, claiming that the evidence established as a matter of law that, in working out and executing the deferral arrangement, the gin had been acting on behalf of the taxpayers rather than Texana. Relying almost exclusively upon *Warren v. United States*, 613 F.2d 591 (5th Cir. 1980), the district court held that there was no evidence to support the jury's verdict and that the undisputed evidence established as a matter of law that the taxpayers were taxable in 1973 upon the sales proceeds. Accordingly, the court granted the govern-

---

1. The Busbys were a few of the more than 250 shareholders of the gin. James Busby testified that the amount of stock that he himself owned was approximately ten dollars' worth. Record, vol. 2, at 48.

2. Record, vol. 2, at 83, 91, 115, 117, 123–25 and 141.

    The gin's sole function with respect to the Busbys was to gin their cotton. They were

never authorized to solicit bids for the sale of cotton or otherwise act as agent for the Busbys. Record, vol. 2, at 38.

3. The gin had provided Texana with a copy of the deferred payment agreement. Record, vol. 2, at 159–60.

4. Record, vol. 2, at 141.

ment's motion and entered judgment for the government. This appeal followed, and, because we find the *Warren* case to be distinguishable, we reverse.

The standard to be applied by this court in reviewing the grant of a judgment n. o. v. was set out long ago in *Boeing Company v. Shipman*, 411 F.2d 365 (5th Cir. 1969) (en banc). Nevertheless, it bears repeating:

On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.

*Id.* at 374.

The district court admitted that the evidence could be construed to show that the gin was the agent for Texana in purchasing the cotton. It did not believe, however, that there was any evidence to support the finding that the gin agreed on behalf of Texana to deposit the money in escrow for the benefit of the Busbys. After reviewing the record, we reach the opposite conclusion. It cannot be said that Texana was ignorant of the agreement; they had received a copy of it from the gin. Secondly, although the gin was authorized to sign drafts for the payment of cotton received, such drafts had to be approved by Texana before they could be paid. Testimony elicit-

ed at trial indicates that the drafts deposited into the escrow account at the Olton State Bank were in fact approved by Texana's home office.[5] Construing these and other facts produced below in the light most favorable to the Busbys, this court finds that there was more than ample evidence to support the jury's findings.[6]

REVERSED for entry of judgment for appellants in accordance with the findings of the jury.

THORNBERRY, Circuit Judge, specially concurring:

While I agree with the result reached by the majority, I view the issue of constructive receipt as presenting a much closer question for decision than the majority opinion suggests. In *Williams v. United States*, 219 F.2d 523 (5th Cir. 1955), this court refused to accept an escrow arrangement as an effective means of deferring taxable income because the purchase price was fully available to the taxpayers when the contract for sale was complete. The majority apparently would distinguish *Williams* on the ground that the Busbys, unlike the taxpayers in *Williams*, never received a letter of credit or any similar incidental benefit from the escrow account in 1973. Though I remain troubled by the seemingly broad language of *Williams* pertaining to self-imposed escrow agreements as a method of income deferral, the absence of any incidental benefit accruing to the Busbys from the escrow account in 1973 persuades me to concur in the judgment of the majority. *See Griffith v. Commissioner*, 73 T.C. 933 (1980), and *Watson v. Commissioner*, 69 T.C. 544 (1978) *aff'd*, 613 F.2d 594 (1980), where the Tax Court rejects escrow deferral arrangements when the bank issued the taxpayers letters of credit on the escrow account for the total deferred price within the tax year.

---

5. Record, vol. 2, at 125.

6. *Warren v. United States*, 613 F.2d 591 (5th Cir. 1980), is not controlling. That decision rested on the fact that the bona fide arms-length agreement to defer payment was not

between the buyer and seller but rather between the seller and his agent. As already indicated, the relationships between the parties in the present case is markedly different.