T.C. Memo. 2004-143

UNITED STATES TAX COURT

KEITH AND JANET SCHERBART, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3345-99.                    Filed June 17, 2004.

Kathryn J. Sedo and Ryan Kelly, for petitioners.

Blaine C. Holiday, for respondent.

MEMORANDUM OPINION

PAJAK, Special Trial Judge:  Respondent determined deficiencies of $3,791 and $2,582 in petitioners' 1994 and 1995 Federal income taxes, respectively.  Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After resolution of other issues as a result of Bot v. Commissioner, 353 F.3d 595 (8th Cir. 2003), affg. 118 T.C. 138 (2002), the sole issue remaining for decision is whether petitioners are entitled to defer income.

Some of the facts in this case have been stipulated and are so found. Petitioners resided in Balaton, Minnesota, at the time they filed their petition.

Section 7491 does not affect the outcome because petitioners' liability for the deficiencies is decided on the preponderance of the evidence.

During taxable years 1994 and 1995, petitioner Keith Scherbart (petitioner) was a member of Minnesota Corn Processors (MCP). MCP is an agricultural cooperative organized under the laws of the State of Minnesota and owned by corn producers for the purpose of marketing and processing their corn.

Under the Uniform Marketing Agreement, petitioner designated MCP as petitioner's agent. Petitioner was obligated to deliver bushels of corn equal to the number of "Units of Equity Participation" he held in MCP. MCP required 3 deliveries of raw corn per year. Members were permitted to fulfill their delivery obligations through a variety of means, including the use of MCP's "pool" corn. "Pool" corn is corn purchased and maintained by MCP, and at the request of a member is used to fulfill a specified portion of the member's delivery obligation. During

the taxable years in issue, petitioner fulfilled his delivery obligations to MCP with "pool" corn. MCP charged a flat per-bushel service charge to members who fulfilled their delivery obligations with "pool" corn.

MCP's processing added value to the corn delivered by its members. As a result, in addition to the payments and fees for delivered corn, MCP made "value added" payments to its members subsequent to each of the 3 required delivery periods. In addition, MCP made discretionary yearend value-added payments determined after the close of MCP's fiscal year ending September 30. Such yearend value-added payments were not mandatory and were based upon MCP's "net proceeds". Only yearend value-added payments are before us.

Petitioner received a letter from MCP, dated August 30, 1995, which stated in pertinent part that the yearend value-added payment for 1995 would "be determined after MCP's annual audit and paid out by mid-November." The letter indicated that petitioner could check a statement that he "would like" to have his 1995 yearend value-added payment deferred until January 1996. In the space above the deferral paragraph, the letter noted that "Value added must still be reported as income on your tax forms. Consult your tax advisor with any questions."

On September 25, 1995, petitioner deferred his yearend value-added payment for 1995 until January 1996. Petitioner

stated that he deferred his yearend value added payment for 1994 to 1995.  For tax purposes, petitioner has deferred the yearend value added payments for each year since becoming a member of MCP in the early 1980s.

Section 451(a) provides that the "amount of any item of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under the method of accounting used in computing taxable income, such amount is to be properly accounted for as of a different period."

Section 1.451-1(a), Income Tax Regs., provides, in relevant part, that

> Gains, profits, and income are to be included in gross income for the taxable year in which they are actually or constructively received by the taxpayer unless includible for a different year in accordance with the taxpayer's method of accounting. * * * Under the cash receipts and disbursements method of accounting, such an amount is includible in gross income when actually or constructively received.

Section 1.451-2(a), Income Tax Regs., provides that

> income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given.  However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions.

We find a direct parallel to Warren v. United States, 613 F.2d 591 (5th Cir. 1980).  The court held that the gins were the

sellers' agents for the sale of cotton. The sellers could instruct the gins to defer the proceeds of the sale to the following year. It was the sellers' decision to defer payments. The agreement of deferral was between the sellers and their agents. The sellers' decision "to have the gins hold the sales proceeds until the following year was a self-imposed limitation * * * Such a self-imposed limitation does not serve to change the general rule that receipt by an agent is receipt by the principal." Id. at 593. The court found that "The income was received by the * * * [sellers'] agents in the year of the sale. The fact that the * * * [sellers] restricted their access to the sales proceeds does not change the tax status of the money received." Id.

Here, in accordance with Bot v. Commissioner, supra, and with the terms of the Uniform Marketing Agreement, we find MCP was the agent of petitioner. As indicated in the August 30, 1995, letter from MCP, the 1995 yearend payment representing his share of sales proceeds received by MCP during its fiscal year ending September 30, 1995, was made available to him as of mid-November of that year. Petitioner conceded that the same practice was followed in 1994, which means that the yearend payment for that year constituting his share of sales proceeds received by MCP during its fiscal year ending September 30, 1994, was made available to petitioner as of mid-November 1994.

Because MCP served as his agent for making the sales and receiving the sales income, the only limitations placed on petitioner's receipt of that income were self-imposed and therefore ineffective to achieve a deferral for tax purposes.

On this record, we conclude that petitioner constructively received the yearend value-added payments during the respective taxable years in issue.

Lastly, because we have held petitioners taxable in 1994 and 1995, we find that petitioners are entitled to offsetting adjustments in each of the respective years to take into account the yearend value-added payments previously reported as income for those years.  Sec. 481.

Contentions we have not addressed are irrelevant, moot, or meritless.

<u>Decision will be entered</u>

<u>under Rule 155</u>.